[Civ. No. 43946. Second Dist., Div. Four. Jan. 24, 1975.]

GENERAL CREDIT CORPORATION, Plaintiff and Respondent, v. JACK FERNAND PICHEL et al., Defendants and Appellants.

845

**COUNSEL**

Rozner, Yorty, Landay, Gibbs, Hodges, Bernstein & Wagner and Robert S. Gibbs for Defendants and Appellants.

Ronald S. Greenfield for Plaintiff and Respondent.

**OPINION**

**JEFFERSON, Acting P. J.**—On August 20, 1970, plaintiff General Credit Corporation filed a complaint for money against defendants Jack

Fernand Pichel, and Carolus and Diane Pichel.[1] The complaint stated four causes of action, seeking recovery of $19,507.06. It alleged three common counts, i.e., an open book account for legal services rendered within four years prior to the filing of the complaint; an account stated, as of August 14, 1969; a debt incurred for legal services within the two years prior to the filing of the complaint; it also alleged breach of a written contract, a retainer agreement for legal services, entered into "on or about April 1, 1969." The complaint recited provisions of the contract, which obligated the defendants to pay Mervyn Hecht, an attorney at law, a certain hourly and daily rate for his legal representation of Jack Pichel. The complaint also alleged the assignment of the Pichel claim by Hecht to plaintiff.

Defendant Jack Pichel filed an answer to the complaint denying liability on the ground that the debt sued upon had been discharged in bankruptcy on March 26, 1969, over the objections of attorney Hecht. On February 16, 1973, defendant made a motion for summary judgment on this ground; the record before us does not contain any material filed in opposition to the motion nor the ruling made. It obviously was denied, however, as trial was held on March 23, 1973.

At trial it developed through the testimony of attorney Hecht that he had been retained by the Pichels to defend Jack against the charge of murdering his wife. Hecht did so, with the assistance of another attorney. It was necessary to employ investigators and various experts. Defendant was acquitted of the charge after a lengthy trial.

Plaintiff produced a document in the handwriting of Jack Pichel, which was undated but acknowledged his indebtedness to Hecht in the sum of $19,157.06. Plaintiff contended, based upon the testimony of attorney Hecht, that Pichel had executed the acknowledgment in Hecht's presence after Pichel had received his discharge in bankruptcy, and that the acknowledgment was enforceable against him.

Defendant objected to the introduction of this evidence, claiming that it constituted a material and prejudicial variance from the pleading in

---

[1]While the complaint originally named three Pichels, Jack and his parents, Carolus and Diane, Diane was never served and the suit was dismissed as to her. Carolus was sued as the guarantor of his son's indebtedness for the legal services; judgment was entered against him for only $5,000, as testimony at trial developed the fact that he and the attorney assignor had orally modified the original written agreement by limiting Carolus' obligation to that amount. Carolus has not appealed the judgment. The sole appellant herein is Jack Fernand Pichel.

the case, as the acknowledgment gave rise to a new and different obligation than that pleaded in the complaint, i.e., the original retainer agreement of the parties. Plaintiff sought leave of the court to amend the complaint to conform to proof. The trial court reserved ruling on the objection and the motion but heard evidence concerning the acknowledgment. It ultimately ruled in favor of plaintiff, inferentially granting the motion to amend the complaint. It also made the following findings of fact and conclusions of law: in late 1968 or early 1969 defendant Pichel signed a retainer agreement with attorney Hecht; the value of the legal services (including expenses) which were rendered was found to be $19,507.06. Hecht billed Pichel regularly but received no payment. On March 26, 1969, Pichel obtained a discharge in bankruptcy, listing the debt to Hecht for "approximately $19,000.00."

It was further found that "subsequent to March 26, 1969, and more particularly on or about May 14, 1969, defendant Pichel executed a document which read as follows:

"I, Jack Pichel, hereby actknowledge [*sic*] my debt to . . . Hecht . . . in the sum of $19,157.06 and I promised [*sic*] to pay this amount to them. I understand that in making this promise this debt is placed outside the bankruptcy proceedings and that the bankruptcy now has no effect on this debt.
"Dated

"/s/ Jack F. Pichel"

The trial court also specifically found that, contrary to the defense contention at trial, the acknowledgment of the debt had been executed by defendant after his discharge in bankruptcy rather than before; that no payments had been made by defendant; and that the claim against him had been duly assigned to plaintiff herein for collection.

The trial court concluded that the original indebtedness incurred by defendant for legal services had been discharged in bankruptcy; that defendant's subsequent acknowledgment had given rise to a new promise to pay which was supported by sufficient consideration and was enforceable. The court also declared that the variance between the pleading and proof was not prejudicial to the defendant because he had been on notice, at least since his motion for summary judgment was denied three weeks before trial, that the plaintiff was proceeding against him on the basis of the acknowledgment rather than the original contract. Judgment was therefore entered against defendant in the

amount of $19,507.06[2] and in addition defendant was ordered to pay interest accrued since 1969 ($7,806.70), attorney fees to plaintiff's counsel as provided in the original retainer agreement ($750) and costs of suit ($71). Defendant has appealed the judgment.

■ Defendant's sole contention in this court is that the trial court committed reversible error by allowing plaintiff to amend the complaint at trial to conform to the proof produced; he argues that the original contract upon which the pleading was based and the subsequent acknowledgment gave rise to two separate and distinct causes of action, rendering amendment impossible, and precluding plaintiff from recovery.

There is considerable divergence in American jurisdictions and among American legal scholars as to the nature of the acknowledgment of a debt which has become unenforceable because of the statute of limitations or discharge in bankruptcy, and its relationship to the original indebtedness. It has been regarded as constituting a completely new and different promise, as a combination of an old and new promise, or as the continuation, by reaffirmation, of the old debt. (6 Am. Jur., Bankruptcy, § 823, p. 1036; 1 Witkin, Summary of Cal. Law (8th ed.) Contracts, § 183, p. 170; 1A Corbin on Contracts, § 219, p. 313.)

■ In California, the acknowledgment of a prior unenforceable obligation gives rise to a new enforceable promise, supported by a "moral obligation" which is regarded as sufficent consideration; except in certain statute of limitations situations, the old obligation is not revived.[3] (Civ. Code, § 1606; *Lambert* v. *Schmalz*, 118 Cal. 33, 35 [50 P. 13]; *Rodgers* v. *Byers*, 127 Cal. 528 [60 P. 42]; *Maurer* v. *Bernardo*, 118 Cal.App. 290, 293 [5 P.2d 36]; *Davison* v. *Anderson*, 125 Cal.App.2d Supp. 908 [271 P.2d 233].)

The conceptual treatment of acknowledgment in California decisions supports the view that plaintiff pleaded one contract and proceeded to

---

[2]The discrepancy between the principal figure recited in the acknowledgment and that stated in the complaint is due to the fact that defendant incurred additional indebtedness for legal services which was not covered in the original retainer agreement and was not discharged in bankruptcy.

[3]When the acknowledgment of a debt occurs before the expiration of the statute of limitations, California courts regard it as reaffirming and continuing the original debt; if the acknowledgment occurs after expiration, it gives rise to a new enforceable promise. *(Rodgers* v. *Byers, supra.)* Such distinctions appear immaterial in the discharge situation, because an acknowledgment before discharge could be discharged along with the original debt.

prove another.[4] There is no question but that defendant's acknowledgment should have been specifically pleaded in the complaint.

However, in California, with the advent of code pleading, liberal rules have been applied when considering allowance of amendments at trial, or even after trial, to pleading in order to conform to proof.

Code of Civil Procedure section 469 provides: "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that a party has been so misled, the court may order the pleading to be amended, upon such terms as may be just."

The section thus confers upon the trial court discretion in the granting or denial of amendments to the complaint at trial, and "[t]he California courts have been extremely liberal in allowing such amendments to conform to proof." (3 Witkin, Cal. Procedure (2d ed.) Pleading, § 1058, p. 2634.) The objective is to avoid the use of technicalities to defeat recovery by a plaintiff who has pleaded, no matter how unskillfully, sufficient facts to warrant recovery from a defendant.

■ The decisional—and the statutory law—on the subject of variances reflects the objective referred to above: as summarized in 3 Witkin, California Procedure (2d ed.) section 1056, on page 2632, "There are three main rules: *First, slight variance* may be disregarded as *immaterial,* and even *substantial* variance may be disregarded or cured under the doctrine of 'theory on which the case was tried.' (See infra, §§ 1057, 1061.) *Second,* most kinds of *material variance,* which would be ground for reversal if uncured, may be corrected by an amendment to conform to proof. (See infra, § 1058 et seq.) *Third,* some departures greater than variance and constituting a *complete failure of proof* cannot be cured or corrected and call for reversal of the judgment. (See infra, § 1062.)" (The third rule set forth is also contained in Code Civ. Proc., § 471.)

It was formerly recognized in California that even liberal application of amendment rules could not correct the situation where the pleading stated one cause of action and the amendment, if allowed, would give

---

[4]The original complaint alleged that the retainer agreement had been entered into after the date of discharge (of which plaintiff's assignor was aware), suggesting a misapprehension on the part of the pleader as to the effect of a subsequent acknowledgment on the original contract.

rise to a separate and distinct cause of action; such a departure was considered fatal. It is upon this principle that defendant relies on this appeal.

■ The principle, however, has been abandoned in a number of cases involving substitution of parties or statute of limitations problems occasioned by amendments to pleading after the statute has run. (See 3 Witkin, *supra*, §§ 1079, 1080, pp. 2655, 2656.) The standard applied in those cases is whether recovery is being sought "on the same general set of facts," together with the consideration of whether the amendment sought is prejudicial to the party against whom it is offered. (See *Austin* v. *Massachusetts Bonding & Insurance Co.*, 56 Cal.2d 596, 600 [15 Cal.Rptr. 817, 364 P.2d 681]; *Wilson* v. *Bittick*, 63 Cal.2d 30, 37 [45 Cal.Rptr. 31, 403 P.2d 159]; and also, *Grudt* v. *City of Los Angeles*, 2 Cal.3d 575, 583 [86 Cal.Rptr. 465, 468 P.2d 825]; *Garrett* v. *Crown Coach Corp.* 259 Cal.App.2d 647, 650 [66 Cal.Rptr. 590].) We conclude that the standard applied in the cases cited herein lends itself to more universal application.

What constitutes "the same general set of facts" is often difficult to determine. (*Barnes* v. *Wilson*, 40 Cal.App.3d 199, 204 [114 Cal.Rptr. 839].) In the case before us, we regard the acknowledgment of an unenforceable debt as inextricably related to the factual background of the creation of the original obligation (see the discussion in Corbin on Contracts, *supra*) and thus the trial court properly afforded plaintiff the opportunity, in the exercise of its discretion, to amend the pleading to conform to the proof; the variance, while material and substantial, did not represent a complete departure from "the general set of facts."

Defendant does not argue upon this appeal, nor can he show, that he was surprised to his prejudice at trial when the acknowledgment of indebtedness was produced; we note the trial court's observation that he had had knowledge of what would be produced at trial in sufficient time to offer any defense he could to the proof produced. We affirm the trial court's judgment.

Another basis for permitting the judgment to stand may be found in the fact that under code pleading, a plaintiff need not, and in fact, cannot reply to an affirmative defense offered by the defendant, by additional pleading; replication is not allowed in California, and any new material raised by the answer is deemed controverted by the plaintiff. (Code Civ.

Proc., §§ 422.10, 431.20.) It could therefore be argued that by pleading the discharge, defendant placed in issue the validity of the discharge as it related to plaintiff, and plaintiff was entitled to produce at trial any evidence which would overcome the defense. As an example of this approach, in *Ivy* v. *Plyler,* 246 Cal.App.2d 678 [54 Cal.Rptr. 894], the plaintiff was allowed to produce proof at trial, without pleading the material at all, that defendant's bankruptcy discharge defense was invalid because of defendant's fraud.

Judgment affirmed.

Kingsley, J., and Cole, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.