[Civ. No. 53239. Second Dist., Div. Four. Sept. 4, 1979.]

SIGNAL HILL AVIATION COMPANY, INC.,
Plaintiff and Respondent, v.
BILL STROPPE, Defendant and Appellant.

630

COUNSEL

I. Michael Bak-Boychuk and G. Merle Bergman for Defendant and Appellant.

Fierstein & Sturman and Michael Blumenfeld for Plaintiff and Respondent.

OPINION

**JEFFERSON (Bernard), J.**—Plaintiff, Signal Hill Aviation Company, a California corporation, filed a complaint seeking damages and equitable

relief. Named as defendants were Bill Stroppe, his wife, Helen Stroppe, the Board of Water Commissioners of the City of Long Beach (herein-after, the Board), and the City of Long Beach (hereinafter, the City).[1] The complaint set forth four causes of action. Plaintiff sought punitive damages for fraud in addition to the other relief requested.[2]

Trial was by the court, sitting without a jury. Judgment was awarded to plaintiff. Defendant Bill Stroppe has taken this appeal from the judg-ment. Defendant has not challenged the findings of fact and conclusions of law as being unsupported by the evidence. But in order to clarify the highly technical contentions made on appeal, we briefly summarize the findings of fact and conclusions of law made below.

## I

### *The Findings and Conclusions*

Plaintiff corporation was formed in August 1973, as a California corporation to conduct a general aviation and aircraft charter business. The incorporators were defendant Stroppe, Louis Fuentes and Benson Ford, Jr. These individuals became the directors, officers and sharehold-ers of plaintiff corporation.

Defendant Stroppe had leased certain property at the Long Beach Airport from the Board and the City from 1965 forward. A fire had damaged that property in March 1973. After the incorporation of plaintiff, defendant Stroppe promised to assign the lease to plaintiff corporation. It was understood that plaintiff corporation would make certain repairs and improvements of the airport property; that it would conduct business on the property; and that it would make the rental payments required by the lease, as well as expend funds for maintenance.

In reliance on defendant's promise to assign the lease to it, plaintiff corporation moved onto the airport premises in 1974 and commenced

---

[1] At trial, the complaint was dismissed as to defendant Helen Stroppe. The Board and the City were named defendants on the theory that they were necessary and indispensable parties to the action. They were represented by counsel at trial but took a relatively minor part in the proceedings; no affirmative relief was awarded against them.

[2] The first cause of action was based on the "good faith" improver-of-property provisions set forth in Code of Civil Procedure section 871.1 et seq. A demurrer was sustained on the ground that plaintiff was not a "good faith" owner of the property in question, and, further, that those provisions have no application when the property is owned by a municipality. The other causes of action alleged breach of fiduciary duty, fraud, and grounds for imposition of a constructive trust; they withstood demurrer.

making the rental payments, repairs and improvements; the sum of $14,592.55 was spent by plaintiff corporation. Defendant repeatedly assured Ford and Fuentes of his intention to execute an assignment of the lease to plaintiff corporation, but for one stated reason and then another, delayed actual execution.

The lease was due for renewal in October 1975. In December 1974, defendant started negotiations with the Board concerning the terms of renewal. In February 1975, the Board agreed to renew the lease, subject to certain requirements involving repair of the subject property. One item which the Board sought was the installation of new hangar doors and sliding track. The renewal not only provided for a term ending in 1980, but included an option to renew for a term ending in 1985.

In March or April 1975, dissension developed among the incorporators, and defendant flatly refused to execute an assignment of the lease. At this point, plaintiff corporation had completed all the repairs contemplated by the parties, including those repairs and improvements itemized by the Board as conditions for the renewal of the lease, except the installation of the hangar doors and track.

Following the dissension, plaintiff corporation vacated the premises and made no further rental payments or expended other funds. Defendant continued to be a director of the corporation. Plaintiff then instituted this action and defendant ceased functioning as a corporate director.

On June 1, 1975, defendant sublet the now renovated airport property to others at a monthly amount far in excess of what he was required to pay the Board under the lease. Defendant derived a net monthly income of $765 from the sublease, and was still doing so at time of trial in 1977.

The trial court concluded that defendant, as an officer and director of plaintiff corporation, had owed the corporation a fiduciary duty; that duty included the obligation of the defendant to act in good faith and with the best interests of the corporation in mind, at all times pertinent herein. Defendant's refusal to execute the assignment of the lease constituted a breach of his fiduciary responsibility, and he was therefore required to account to plaintiff for all personal benefit derived by him as the result of the breach.

The trial court also applied the doctrine of promissory estoppel to the case at bench, finding that defendant could not assert the defenses of lack

of consideration and the statute of frauds in connection with his oral promise to assign the lease. As the result of defendant's breach of duty and failure to keep his promise, a constructive trust was imposed by the court on the airport lease, to prevent defendant's unjust enrichment. Defendant, as a constructive trustee, was required to account for the monthly profit he had derived from the lease since the date of breach. It was also determined that he would be accountable to plaintiff for the monthly income derived from the sublease of the property until such time as the leasehold terminated or defendant executed the assignment of the lease to the plaintiff.

## II

### The Judgment

The trial court's judgment was phrased in the alternative. In the first portion thereof, it ordered defendant to execute an assignment of the lease to plaintiff. It further ordered defendant to pay plaintiff $18,690, a sum constituting the net profit derived from the sublease by defendant from June 1, 1975, to September 14, 1977. In addition, the net profit of $765 per month from the sublease which would accrue after September 14, 1977, was to be paid to plaintiff as long as defendant held the leasehold and had not executed the assignment.

However, the trial court recognized that the Board and the City would have to approve the assignment by defendant to plaintiff, and that, without this approval, it would be impossible for plaintiff to obtain the lease. Therefore, in the second part of the judgment, the court determined that if those entities refused to approve such an assignment, a total money judgment of $107,487.55 would be due plaintiff corporation from defendant. The award included not only funds expended by plaintiff but $75,205 as the projected net rental income which would accrue from the airport property during the extended lease term.

## III

### No Waiver by Defendant of His Right to
### Appeal by Partial Compliance With
### the Judgment

During the pendency of this appeal, plaintiff made a motion in this court to augment the record with documentary evidence showing that

defendant has in fact now executed the assignment of the airport lease to the plaintiff corporation with the approval of the Board and the City. We deferred ruling upon the request for augmentation until such time as we considered the merits of this appeal. We now grant the motion to augment, noting that defendant's compliance with the first portion of the judgment operates to relieve him of the substantial financial burden imposed by the alternative portion of the judgment. Thus, defendant's contentions on appeal relating to the now inoperative portion are not considered here; we deem that part of the appeal to be moot.

We next consider whether defendant's compliance with a part of the judgment constituted a waiver of his entire appeal. As we explained in *Selby Constructors, Inc.* v. *McCarthy* (1979) 91 Cal.App.3d 517, 521 [154 Cal.Rptr. 164], "[t]he general rule is to the effect that a party impliedly waives the right to appeal from a judgment if he *voluntarily* complies with its terms or if he satisfies it by voluntary payment or otherwise. However, a waiver is implied in this situation 'only if the satisfaction or compliance is by way of compromise, or is coupled with an agreement not to appeal. Where it is compelled or coerced, e.g., by the threat of forfeiture or seizure of property under execution, there is no waiver.' [Citations.]" (Italics in original.)

While the augmented material establishes that defendant has complied at least in part with the judgment, it tells us nothing about the circumstances under which the assignment was executed. In exhibit I (the augmented material) we note that the assignment by defendant recited that it was made pursuant to court order. This does not suggest voluntariness or the desire to compromise. In addition, we have not been informed whether the trial court's monetary award contained in the first part of the judgment (of $18,690 plus $765 per month commencing Sept. 15, 1977) has been paid to plaintiff corporation. Finally, no request for dismissal has been made by either side. We conclude, therefore, that no waiver has been established. We now turn to consideration of the remaining contentions of the defendant—those not specifically directed toward the alternative award.

IV

*The Matter of Variances Between*
*Pleading and Proof*

Defendant makes the assertion that there were material variances between the pleading of the plaintiff, the proof offered at trial, and

the findings, and that the judgment accordingly should not be affirmed. ■ We note, as a preliminary observation, that California courts take a liberal view toward inartfully drawn complaints and other pleadings (Code Civ. Proc., § 452) and routinely resolve variances between pleading and proof by allowing amendment before, during and after trial (see, e.g., *General Credit Corp.* v. *Pichel* (1975) 44 Cal.App.3d 844 [118 Cal.Rptr. 913]; 3 Witkin, Cal. Procedure (2d ed. 1971) § 300 et seq., pp. 1972-1973, and § 1056, p. 2631). Another principle which affects variances is that known as *"the theory upon which the case was tried"* (3 Witkin, *supra,* § 300, p. 1973). (Italics in original.)

It remains essential, however, that a complaint set forth the actionable facts relied upon with sufficient precision to inform the defendant of what plaintiff is complaining, and what remedies are being sought. ■ In the case at bench, defendant complains that the complaint neither pleaded a breach of oral contract nor mentioned the doctrine of promissory estoppel. We have examined the complaint; while not a pristine example of pleading, it did inform defendant that his asserted promise to assign the lease had been relied upon by plaintiff corporation to its detriment, and that plaintiff sought the redress of general damages, punitive damages, an accounting and "such other and further relief as to the Court seems just." Thus, defendant was put on notice that plaintiff was asking for both legal and equitable relief.

It is true that promissory estoppel was not specified in the complaint. It was clear, however, from the pleading and the progress of the trial, that *both* theories of constructive trust, based on defendant's fiduciary relationship to plaintiff, and promissory estoppel were potentially viable theories pursuant to which plaintiff could obtain relief. The record discloses that, save for one general motion to dismiss, made by defendant before plaintiff had concluded presenting evidence, defendant did not object to variances between pleading and proof.

The trial court clearly regarded the motion as premature, subject to renewal when plaintiff's evidence was in, but no motion was made by defendant at the appropriate time. Such acquiescence by defendant during trial may be equated with acceptance of variances if such existed. It is apparent from the record that defendant knew what the issues were, and attempted to persuade the trier of fact to determine them favorably to him. However, there was ample evidence to support the application of both constructive trust and promissory estoppel principles to the case by the trial court; we discern no injustice.

V

*Application of the Doctrine*
*of Promissory Estoppel*

■ Defendant particularly attacks the trial court's application of the doctrine of promissory estoppel to the facts adduced below. He argues that the evidence (and the findings) established a *contract* rather than a promise made without consideration; that defendant, in return for his promise to assign the lease, bargained with plaintiff for certain perform-ance, i.e., payment of the rent and the making of repairs and improvements; he asserts further, that the benefits of the bargain made flowed to defendant as the promisor. For these reasons, defendant claims that the evidence precluded the trial court from applying promissory estoppel.

The doctrine of promissory estoppel is set forth in section 90 of the Restatement of Contracts. It provides: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

■ California recognizes the doctrine. "Under this doctrine a promis-or is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." (*Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249 [74 Cal.Rptr. 398, 449 P.2d 462].)

Defendant relies on certain principles concerning application of promissory estoppel contained in such cases as *Healy* v. *Brewster* (1963) 59 Cal.2d 455 [30 Cal.Rptr. 129, 380 P.2d 817] and *Raedeke* v. *Gibralter Sav. & Loan Assn.* (1974) 10 Cal.3d 665 [111 Cal.Rptr. 693, 517 P.2d 1157]. The California Supreme Court explained in *Raedeke* that " '[t]he purpose of this doctrine is to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. *If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable.*' " (*Id.,* at pp. 672-673.) (Italics added.) These cases also limit application of the promissory estoppel doctrine to cases where no benefit flows to the promisor.

Contrary to defendant's claim, however, the trial court made *no* finding that the parties had entered into a contract, but rather, that defendant had made a promise which he failed to keep. Implicit in the trial court's findings and judgment was the factual determination that defendant's promise had been made without bargaining. And, furthermore, the court decided that the "benefit" derived from plaintiff's conduct in reliance on defendant's promise would not have flowed directly to defendant, assuming that the lease had been assigned as promised. The trial court's interpretation of the evidence is entitled to great weight; we conclude that the limitations on promissory estoppel enunciated in *Healy* and *Raedeke* have no application here.

In addition, defendant himself took the position at trial that his promise to assign had been made without consideration, and was merely a gratuitous gesture—at best to be performed if he remained in the corporate enterprise. It is only on appeal that defendant urges the existence of a contract. As Witkin has stated, " 'A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' " (6 Witkin, pt. I, Cal. Procedure (2d ed. 1971) § 281, pp. 4269-4270.)

It follows from our rejection of defendant's contractual argument that we also reject his claim that plaintiff's failure to install the hangar doors and the sliding track excused defendant from keeping the promise to assign. Even had there been a contract between the parties in 1974, a condition which emerged from the negotiations of the Board and the defendant in 1975 would not have compelled performance by plaintiff of the condition in order to obtain relief.

## VI

### The Constructive Trust Theory

Defendant next takes issue with the trial court's employment of constructive trust principles. Grounds for imposition of a constructive trust were alleged in the fourth cause of action and that cause incorporated by reference the factual allegations which had been contained in the first cause of action, to which a demurrer was sustained. Defendant asserts that the incorporation by reference rendered the fourth cause of action invalid. This assertion is without merit where several causes of action have withstood demurrer. On the contrary, "[a]voidance

of repetition by incorporating these [factual] allegations of the first count by reference thereto in subsequent counts is a convenience to the pleader, his adversary and the court." (3 Witkin, Cal. Procedure (2d ed. 1971) § 323, p. 1991.)

Defendant declares that he was not in a fiduciary relationship with the plaintiff with respect to the lease, a lease created long before plaintiff's incorporation, and that no breach of that relationship could occur. It was undisputed that defendant was an incorporator, officer and director of plaintiff corporation during the period in which the actionable events occurred. ■ The cases are legion which hold that a director or officer of a corporation acts in a fiduciary capacity with respect to the corporation. (*Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 108-109 [81 Cal.Rptr. 592, 460 P.2d 464]; see also Corp. Code, §§ 300, 309, subd. (a).) It was stated in *Pigeon Point Ranch, Inc.* v. *Perot* (1963) 59 Cal.2d 227, 233 [28 Cal.Rptr. 865, 379 P.2d 321]: "[T]he law does not allow [a director or officer] to secure any personal advantage as against the corporation."

■ In the case at bench, while no finding of fraud was made, nor were punitive damages imposed, the evidence suggested that defendant had induced the corporation of which he was director to expend funds to improve the airport property with no intention of assigning the lease to it. In any event, after the improvements were made, he elected to retain the promised leasehold for himself; the increased rental income defendant was then able to obtain for the renovated property was undoubtedly a matter of "personal advantage." The trial court possessed broad equitable powers to fashion a remedy which would prevent defendant from being unjustly enriched at plaintiff's expense. We hold that the remedy of constructive trust was appropriate. (See Civ. Code, § 2223; *Day* v. *Greene* (1963) 59 Cal.2d 404 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802]; and *Thompson* v. *Price* (1967) 251 Cal.App.2d 182, 189 [59 Cal.Rptr. 174].)

## VII

### Loss of Profits as Damages Under Promissory Estoppel Doctrine

As we have indicated, the trial court's judgment was based upon two distinct theories which allowed not only the imposition of a form of specific performance (see Civ. Code, § 3384) but one awarding to plaintiff

those profits defendant had received and would receive from the lease after breach. ■■ Defendant contends that the trial court erred in awarding plaintiff "loss of profits" damages, because there is authoritative support for the position that promissory estoppel damages should be limited to those sums actually incurred by the promisee in reliance on the promise.

In *Swinerton & Walberg Co.* v. *City of Inglewood-L.A. County Civic Center Authority* (1974) 40 Cal.App.3d 98, 105 [114 Cal.Rptr. 834], the plaintiff was the low bidder on a public construction project, but the bid was awarded by defendants to another. *Swinerton* held that plaintiff had a cause of action based upon promissory estoppel, but declared that the damages which could be awarded "might well be limited to those it sustained directly by reason of its justifiable reliance upon the Authority's promise—in other words, to the expenses it incurred in its fruitless participation in the competitive bidding process. . . ." No other California case law is cited in support of this limitation on recovery pursuant to the doctrine of promissory estoppel, but *Swinerton* does suggest that the unsuccessful bidder would not be able to claim the profit which would have been realized if the bid had been accepted and the work performed. *Swinerton* did recognize a divergence of opinion on this issue; it stated that "[o]n the other hand, the opinions of the commentators regarding the justice of limited as opposed to complete contractual recovery (see Civ. Code, § 3300) in promissory estoppel is divided. . . ." (*Id.*)

Conceptually, promissory estoppel is distinct from contract in that the promisee's justifiable and detrimental reliance on the promise is regarded as a substitute for the consideration required as an element of an enforceable contract. There appears to be no rational basis for distinguishing the two situations in terms of the *damages* that may be recovered; both may involve the problem of ascertaining a future loss of profits, actually a problem of presenting adequate proof. Complete contractual recovery may include, under some circumstances, loss of profits when the loss is definite rather than speculative. We note, too, that in the recent case of *C & K Engineering Contractors* v. *Amber Steel Co.* (1978) 23 Cal.3d 1, 8 [151 Cal.Rptr. 323, 587 P.2d 1136], the California Supreme Court appeared to emphasize, with approval, the exercise of judicial discretion in promissory estoppel cases to fashion relief to do justice.

We thus decline to limit plaintiff's recovery herein to only actual expenditures made in reliance on defendant's promise. We determine

that the net profits derived by defendant from the leasehold were also appropriately awarded to plaintiff on equitable grounds, as the result of both promissory estoppel and constructive trust theories. The monetary award made below was "more like an accounting between the parties than like an assessment of damages." (*Ellis* v. *Mihelis* (1963) 60 Cal.2d 206, 220 [32 Cal.Rptr. 415, 384 P.2d 7].)

We find no error in this record which necessitates reversal of the judgment.

The judgment is affirmed.

Kingsley, Acting P. J., and Alarcon, J., concurred.