[Civ. No. 55540. Second Dist., Div. Five. Dec. 18, 1979.]

JAMES R. WALKER, JR., Plaintiff and Apppellant, v.
GIVEN INTERNATIONAL, Defendant and Respondent.

COUNSEL

Ernst Lipschutz for Plaintiff and Appellant.

Macdonald, Halsted & Laybourne, Kenneth C. Bornholdt and Thomas S. Kidde for Defendant and Respondent.

OPINION

STEPHENS, J.—Appellant James R. Walker, Jr., dba Grimes-Walker, Skillhorn Corporation, a California corporation (hereinafter referred to as Walker) brought this action against respondent Given International (hereinafter referred to as Given) for fraud, breach of contract, and breach of warranty. The trial court granted summary judgment for respondent. We affirm with regard to the issues dealing with the arrangement proceedings and the effect of the discharge, but reverse the lower court's holding that a bankruptcy court has the full and exclusive jurisdiction over the issue of whether respondent reaffirmed a prebankruptcy obligation owed to appellant.

The pertinent facts of the case are as follows: Appellant Walker purchased a Given/Tudor 2213 lathe machine from Given on May 15, 1975. Appellant had trouble with the machine from the outset. During the latter part of 1975, Given offered to redesign the machine and incorporate the new changes in appellant's machine. In the meantime, Given sent personnel to Walker to assist in the operation of the machine. Walker was still awaiting the design to be completed and incorporated as of March 26, 1976, the date of respondent's bankruptcy discharge.

Just prior to August 30, 1976, Walker was informed that the redesign of the machine was complete. The incorporation was completed a few days later. It was at this point in time that appellant concluded that the major problems were not solvable.

On November 18, 1976, appellant filed its initial complaint against respondent in the superior court. On July 14, 1977, appellant filed its second amended complaint. On December 14, 1977, respondent filed its notice of motion and petition for summary judgment asserting that ap-

pellants were discharged by the order of confirmation entered in the "Chapter XI" arrangement. On January 26, 1978, the trial court entered its minute order granting respondent's motion.

The facts relative to the bankruptcy proceedings are that on February 13, 1976, Given filed under chapter XI for bankruptcy. The proposed arrangement contained a creditor's composition agreement which had been entered into in September 1975; this was the product of a creditor's committee appointed by unsecured creditors on May 13, 1975. On May 15 of that same year Walker's purchase of the lathe was accomplished without Walker's knowledge of the precarious financial condition of Given. Walker claims that the expert supplied by Given to analyze Walker's business was relied upon insofar as recommendations and representations made regarding capability of the Given lathe was concerned. Walker argues that the lathe was untested and inadequate for the required work, though represented to be redesignable to satisfaction.

The agreement referred to above constituted a plan for satisfaction of debts and provided in part: "Any claim which arose by reason of goods delivered or services performed on or after May 13, 1975, shall be considered a current operating expense and shall be paid on a current basis by the Debtor." Further, the "Class 3" debtors, as set forth in said arrangement, are: "All unsecured debts of Debtor incurred during the moratorium period, which was subsequent to the May 13, 1975, meeting and prior to the date of the commencement of these proceedings."

Walker, as determined by the trial court, received notice of the bankruptcy proceedings prior to its termination. However, throughout the period of May 15, 1975, to March 26, 1976 (the date of bankruptcy confirmation), Given was reworking the lathe in an effort to make it acceptable to the needs of Walker. In fact the redesign work continued until incorporation into Walker's lathe on August 30, 1976. At this later date, Walker determined that the lathe was unsatisfactory and could not be adequately modified to accomplish the work necessary.[1]

The trial court's findings of fact are as follows: Appellants had knowledge of the breach of contract and fraud claims prior to the date

---

[1]We have set forth, sketchily, the background facts; however, whether initially Walker's claim was within the control of the bankruptcy proceedings or not was determined in that proceeding. The thrust of our consideration is whether the state court has jurisdiction to determine if by acts subsequent to the close of those proceedings Given reactivated its obligation to Walker.

of discharge and had notice of the chapter XI proceedings. In addition, appellants were not scheduled creditors; they failed to file a claim in the reorganization proceedings, and they failed to make a timely application to establish nondischargeability.

The court concluded that (1) the purported fraud and contract claims were as a matter of law discharged by the order of confirmation and (2) the estoppel theory raised by appellant was within the exclusive jurisdiction of the United States bankruptcy court.

## DISCUSSION

In the present case, the acts of acknowledgement prior to discharge are immaterial since those acts were discharged along with the original obligation. ■ The purpose of the bankruptcy act is to afford the debtor a new chance in life unburdened by preexisting debts. "...Congress intended to consolidate the adjudication of all questions respecting the effect of a bankruptcy discharge in a single forum, the bankruptcy court itself, thereby reducing the opportunities for creditor abuse by means of collateral proceedings in...courts..." (*Glass* v. *Miller & Kearney* (9th Cir. 1978) 577 F.2d 537, 538-539.)

■ However, the postdischarge conduct by respondent raises a question of fact of whether the debt was revived by reaffirmation.

In raising the estoppel issue at the trial level, appellant relies upon the facts that respondent treated the warranty obligation as valid and subsisting by agreeing to continue its effort to repair said machine. ■ "It is settled that where the act or promise of one man causes another in reliance thereon to do or forbear to do a thing to his detriment, which he otherwise would have done, the promisor is estopped from taking advantage of the act or omission caused by his own act or promise." (*Forman* v. *Scott* (1964) 231 Cal.App.2d 340, 344 [41 Cal. Rptr. 805].)

■ "In California, the acknowledgement of a prior unenforceable obligation gives rise to a new enforceable promise, supported by a 'moral obligation' which is regarded as sufficient consideration;..." (*General Credit Corp.* v. *Pichel* (1975) 44 Cal.App.3d 844, 848 [118 Cal.Rptr. 913]; Civ. Code, § 1606; *Lambert* v. *Schmalz* (1897) 118 Cal. 33, 35 [50 P. 13].) ■ The trial court ruled as a matter of law

that the bankruptcy court had exclusive jurisdiction over such matters and that to allow a state court to determine the issue of estoppel would in effect allow a state court to usurp the prerogative of the United States court and establish appellate review. It is this finding that we find unmeritorious.

The jurisdictional question of postdischarge conduct which reaffirms or revives preexisting debts was squarely presented in *Glass* v. *Miller & Kearney, supra*, 577 F.2d 537. The circuit court concluded "that section 17 (c)(1) of the Act [11 U.S.C. § 35 (c)(1)] does not confer jurisdiction on bankruptcy courts to determine whether postdischarge acts of the bankrupt effect a revival or reaffirmation of a previously discharged debt." (P. 539.) It further stated that "[q]uestions of revival by reaffirmation or waiver raised by a bankrupt's post-petition conduct are thus matters of state law to be resolved in a creditor's suit on the alleged obligation in state court." (*Id.* fn. 5.)

The court's analysis focused on the intent of the Legislature in permitting bankruptcy courts to adjudicate specific questions of dischargeability and granting the bankruptcy court exclusive jurisdiction over those specific questions. Yet, the court concluded that Congress did not intend to extend the jurisdiction of bankruptcy courts to encompass questions of the reaffirmation of discharged debts by postpetition acts of the bankrupt. (*Id.* at p. 539, citing 116 Cong. Rec. 34818 (1970).)

This case is remanded on the issue of whether the discharged debt was revived by postdischarge conduct on the part of the debtor. ■ "The appellate courts have power to order a retrial on a limited issue, if that issue can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial." (*Brewer* v. *Second Baptist Church* (1948) 32 Cal.2d 791, 801 [197 P.2d 713].)

In the circumstances of this case, the issue of reaffirmation by postdischarge conduct is separate and distinct from the issues dealing with the effect of the discharge.

Affirmed in part and reversed in part with directions.

Kaus, P. J., and Ashby, J., concurred.