Filed 5/23/22  Hermosillo v. Alderete CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LUCERO A. HERMOSILLO, as Executor, etc., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> MAYRA E. ALDRETE, <br><br>     Defendant and Appellant. | D078816 <br><br><br> (Super. Ct. No. 37-2019-00024035-PR-PW-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Julia C. Kelety, Judge.  Affirmed.

James D. Crosby for Defendant and Appellant.

Broaden Law, Naima B. Solomon for Plaintiff and Respondent.

Mayra E. Aldrete[1] appeals from an order determining title to a share of real property under Probate Code section 850.  The court concluded that the disputed share was an asset of Victoria Lucero's estate based on a 2002 deed

---

[1]    Because this matter involves many family members with the same last name, we refer to them initially by their first and last name, and thereafter by first name only.

from Filogonio Lucero to Andrew Hermosillo and a subsequent quitclaim from Andrew to Victoria's estate in 2020. Mayra argues that reliance on the 2002 deed and the subsequent quitclaim at trial was a material variance from the allegations of Lucero Hermosillo's petition, requiring reversal. According to Mayra, the petition alleged that Victoria's estate owned the disputed share based exclusively on a "1999 Agreement"—a claim Mayra argues is barred by the statute of frauds. Even if the court could properly consider the 2002 deed, Mayra contends that the deed from Filogonio to Andrew was ineffective because it does not sufficiently describe the property to be transferred. Lastly, Mayra asserts there is no evidence of a quitclaim by Andrew to Victoria's estate.

We reject Mayra's arguments. There was no material variance between the petition and proof at trial, and even if there was, the trial court did not abuse its discretion in allowing the petition to be amended to conform to proof. Thus, the "1999 Agreement" is irrelevant, as is Mayra's statute of frauds argument based on its asserted unenforceability. And while the 2002 deed was missing an attachment that purported to provide a description of the property Filogonio transferred to Andrew, substantial evidence supports the trial court's finding that the assessor's parcel number on the deed, together with extrinsic evidence, established that the 2002 deed sought to transfer the disputed share. Finally, because there is no reporter's transcript of the trial, we must presume evidence was presented to support the trial court's finding that Andrew subsequently quitclaimed the disputed share to Victoria's estate. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In 1997, Maria Felix Pelayo passed away without leaving a will, leaving behind seven children, two of whom were Filogonio and Victoria.

2

Through administration of Maria's estate in 1999, the probate court awarded each sibling a one-seventh share of the real property owned by Maria, to be held as equal tenants-in-common. The probate court's order identified only one piece of real property owned by Maria at her death, located at 705-707 65th Street, San Diego, California, with Assessor's Parcel Number (A.P.N.) 549-101-38-00.

The dispute in this case is over who owns the one-seventh share of property that Filogonio inherited from his mother. Lucero is the executor of the estate of Filogonio's sister Victoria. She has argued the disputed share belongs to Victoria's estate. Mayra, contends the disputed share belongs to her.

In her verified petition, filed on August 14, 2019, Lucero alleged the basis of Victoria's estate's claim to the disputed share as follows:

> "4. [Victoria] . . . died having a claim to an additional one-seventh interest in the PROPERTY as tenant-in-common (the 'DISPUTED SHARE'). The DISPUTED SHARE was acquired by her brother FILOGONIO LUCERO, currently a resident of Tijuana, Mexico, pursuant to the INHERITANCE DECREE. [¶] . . . [¶]

> "19. Petitioners are informed and believe that in or around 1999, FILOGONIO LUCERO agreed to transfer his right, title and interest in and to the property, i.e., the DISPUTED SHARE, to [Victoria] in exchange for an immediate payment of an unknown amount and support payments throughout his lifetime.

> "20. [Victoria] paid the immediate payment amount to FILOGONIO LUCERO and supported FILOGONIO LUCERO until her death. She even claimed him as her dependent for federal tax purposes.

3

"21.  Petitioners are informed and believe that [Victoria's] son ANDREW HERMOSILLO agreed to hold title to the DISPUTED SHARE for [Victoria's] benefit."

In her trial brief, Lucero claimed that in August 2002, Filogonio asked Victoria for a large sum of money.  They allegedly agreed that in exchange for Victoria giving him the money and supporting him over his lifetime, he would sign over his one-seventh share of the property to Victoria through a strawman—Victoria's son, Andrew.  Andrew held the disputed share in his name for his mother because she had tax liens and did not want the disputed share to be encumbered.  To memorialize the agreement, in August 2002, Jaime Pelayo Casados (another of Maria's seven children/heirs) went to a jail in Mexico where Filogonio was located and witnessed him sign a deed granting the disputed share to Andrew.  A notary accompanied Jaime, but was not allowed into the jail and was therefore only able to notarize Jaime's signature as a credible witness to Filogonio's signature.  Lucero argued that the 2002 deed was a valid conveyance of the disputed share from Filogonio to Andrew.  Andrew subsequently executed a deed granting the disputed share to Victoria's estate.

Mayra argued that she owned the disputed share.  She claimed that Filogonio transferred his one-seventh interest to her by a grant deed dated June 20, 2019, and recorded in the Official Records of San Diego County on June 21, 2019.  Mayra urged that because there is no other recorded deed from Filogonio to any other individual or entity, Mayra holds record title to the disputed share.

In response to Lucero's claims, Mayra contended that Lucero could not rely on any 1999 agreement for Filogonio to sell the disputed share to Victoria, to be held by Andrew, as alleged in Lucero's petition because there is no writing memorializing such an agreement.  According to Mayra, such

4

claim would be barred by the statue of frauds. She also argued that Lucero should be precluded from relying on the 2002 deed because it was not an exhibit to Lucero's petition and was formally produced only three weeks prior to the then-scheduled trial date.[2] She then went on to address the merits of the 2002 deed, asserting there was no credible evidence that Filogonio signed it, execution of a deed cannot be proven by a subscribing witness, and the deed did not sufficiently describe the property to be transferred.[3]

At trial, the court received the 2002 deed into evidence over Mayra's counsel's objection. It contains the assessor's parcel number, "A.P.N.: 549-101-38-00" and states that "Filogonio Lucero, Son, who erroneously acquired title as Filogonia Lucero, Daughter, hereby GRANT(S) his 1/7th interest as tenant-in-common to, Andrew Hermosillo, a single man the following described real property in the County of San Diego, State of California: see Attached Exhibit 'A'." There is no "Exhibit A" attached to the 2002 deed.

Mayra, Lucero, Jaime and Andrew testified at trial. There is no reporter's transcript of the trial. After trial, Lucero filed an amended petition in which she alleged that Filogonio transferred the disputed share to Andrew by way of the 2002 deed. A copy of the deed was attached to the amended petition. Lucero alleged that Jaime witnessed Filogonio execute the 2002 deed in a jail in Tijuana, Mexico, and subscribed his name on the deed as a

---

[2]    Trial was originally scheduled for May 1, 2020. In April 2020, due to the COVID-19 pandemic, trial was continued to August 7, 2020. Trial briefs were filed on August 4, 2020, however, trial did not actually occur until January 29, 2021.

[3]    On appeal, Mayra challenges the validity of the 2002 deed based only on the sufficiency of the description of the property to be transferred.

witness. Lucero further alleged that on July 13, 2020, Andrew quitclaimed the disputed share to Lucero, as executor of Victoria's estate.

The trial court concluded that the disputed one-seventh share of property Filogonio inherited from Maria was an asset of Victoria's estate, based on Filogonio's execution of the 2002 deed conveying the disputed share to Andrew who, in turn, conveyed it to Victoria's estate. In support of its holding, the court found that Jaime testified credibly about his trip to visit his uncle in a Tijuana jail where he witnessed Filogonio sign the 2002 deed. Although "Exhibit A" was not attached to the 2002 deed, the trial court found that "both . . . the parcel number on the face of the Deed, as well as the circumstances underlying its execution" established that the 2002 deed concerned the disputed one-seventh share of the property Filogonio inherited from Maria. The court further found that "[i]t appears that the parties agree that in July of 2020, ANDREW HERMOSILLO quitclaimed Filogonio's share to the Estate of Victoria Lucero, although the court has been unable to locate such a document in the trial exhibits or the court file."

## DISCUSSION

Mayra points to Lucero's pleaded claim that Victoria's estate owns the disputed share based on a "1999 Agreement" and argues it is barred by the statute of frauds. She challenges the trial court's reliance on proof of the 2002 deed and the 2020 quitclaim at trial, asserting it constitutes a prejudicial material variance from the allegations of Lucero's petition that compels reversal of the judgment. Even if the court could properly consider the 2002 deed, Mayra argues that any such deed from Filogonio to Andrew was ineffective because it does not sufficiently describe the property to be transferred. Finally, Mayra contends there is no evidence of a quitclaim by Andrew to Victoria's estate.

6

A. *The Trial Court Did Not Abuse Its Discretion in Allowing the Petition to be Amended to Conform to Proof at Trial*

In what amounts to a bait-and-switch argument, Mayra complains that Lucero unfairly changed her theory of the case just prior to trial. She points to allegations in the petition focused on an alleged "1999 Agreement," which were purportedly abandoned at trial in favor of the story of the 2002 deed signed by Filogonio in the Tijuana jail.

"Variance between the allegation[s] in a pleading and the proof shall not be deemed material, unless it has actually misled the adverse party to his or her prejudice in maintaining his or her action or defense upon the merits. If it appears that a party has been so misled, the court may order the pleading to be amended, upon such terms as may be just." (Code Civ. Proc., § 469.)[4] "Where the variance is not material, as provided in Section 469 the court may direct the fact to be found according to the evidence, or may order an immediate amendment, without costs." (§ 470.) "[T]he allowance of amendments to conform to the proof rests largely in the discretion of the trial court and its determination will not be disturbed on appeal unless it clearly appears that such discretion has been abused. [Citations.] Such amendments have been allowed with great liberality 'and no abuse of discretion is shown *unless by permitting the amendment new and substantially different issues are introduced in the case or the rights of the adverse party prejudiced* [citation].' [Citations.]" (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31.)

In our view, the 2002 deed from Filogonio to Andrew and the subsequent quitclaim from Andrew to Victoria's estate was not a

---

4    All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

substantially different issue or set of facts from that alleged in Lucero's petition. Mayra characterizes Lucero's claim that Victoria's estate owns the disputed share as being based exclusively on a "1999 Agreement." Lucero's petition, however, did not allege the existence of a 1999 Agreement in the sense of a written document. Rather, she claimed that "in or around 1999, FILOGONIO LUCERO agreed to transfer his right, title and interest in and to the property, i.e., the DISPUTED SHARE, to [Victoria] . . . ." Lucero also alleged that "ANDREW HERMOSILLO agreed to hold title to the DISPUTED SHARE for [Victoria's] benefit." A 2002 deed from Filogonio to Andrew, and the subsequent quitclaim from Andrew to Victoria's estate, is not inconsistent with Filogonio's earlier agreement "in or around 1999" to transfer his interest.

Mayra argues Lucero presented a brand-new claim at trial based on the 2002 deed and the subsequent quitclaim. The only case that Mayra cites does not support her argument. In *General Credit Corporation v. Pichel* (1975) 44 Cal.App.3d 844 (*General Credit*), the Court of Appeal concluded that the trial court properly allowed the plaintiff to amend its pleading to conform to proof, based on the standard of "whether recovery is being sought 'on the same general set of facts'." (*Id.* at p. 850.) There, the plaintiff sued the defendant to recover a debt for legal services provided pursuant to a retainer agreement. (*Id.* at pp. 846-847.) The defendant denied liability on the basis that the debt had been discharged in bankruptcy. (*Id.* at p. 846.) At trial, the plaintiff produced a document that the defendant had executed after his discharge in bankruptcy, acknowledging the debt at issue. (*Id.* at p. 847.) Thus, the plaintiff pled one contract and proceeded to prove another, leaving "no question . . . that defendant's acknowledgment should have been specifically pleaded in the complaint." (*Id.* at pp. 848-849.) Even so, the

8

Court of Appeal "regard[ed] the acknowledgment of an unenforceable debt as inextricably related to the factual background of the creation of the original obligation." (*Id.* at p. 850.) Thus, the trial court properly allowed the plaintiff to amend the pleading to conform to proof because "the variance, while material and substantial, did not represent a complete departure from 'the general set of facts.' " (*Ibid.*)

Here, the amended petition does not seek to assert a "new" claim that is inconsistent with the allegations of the initial pleading. Lucero's original petition alleged that Filogonio agreed to transfer the disputed share to Victoria, and Andrew agreed to hold title to the disputed share for Victoria. That is exactly what the 2002 deed and subsequent quitclaim accomplished, as was alleged in Lucero's amended petition.[5] The date of the agreement as alleged in the original petition was hardly exact ("in or around 1999"). And unlike in *General Credit,* Lucero did not plead an agreement in the sense of a specific contract (i.e. a retainer agreement or a written "1999 Agreement"), then seek to prove another. Arguably, any variance was insubstantial and could have been disregarded as immaterial without an amendment. (*General Credit, supra,* 44 Cal.App.3d at p. 849 ["*slight variance* may be disregarded as *immaterial*"].)

---

[5] Mayra also argues that once Lucero relied on instruments that purportedly conveyed the disputed share to and from Andrew, Andrew became a necessary party to the action. She urges that because Andrew was not brought into the case, the trial court could not have adjudicated his rights to the disputed share. Mayra has forfeited this issue both because she failed to raise it below and because she fails to provide any legal authority on appeal. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948; *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830.)

Even if the claim changed, we also see no prejudice to Mayra resulting from the amendment adding references to the 2002 deed and the subsequent quitclaim. Mayra contends she was not accorded the right to conduct investigation and discovery into the 2002 deed. She asserts it was produced after discovery was completed. Mayra, however, provides no citation and we have found nothing in the record to support this contention. (*Sky River LLC v. County of Kern* (2013) 214 Cal.App.4th 720, 741 [any reference to a fact in an appellate brief must be supported by citation to the record]; Cal. Rules of Court, rule 8.204(a)(1)(C).) Regardless, although Mayra argued in her trial brief that Lucero should be precluded from offering the 2002 deed at trial because it was not timely produced in discovery, there is no indication that Mayra requested further discovery or a trial continuance. Moreover, while Lucero produced the 2002 deed on July 15, 2020, three weeks before the then-scheduled August 7, 2020 trial date, the trial did not actually occur until January 29, 2021, more than five months later.

There was also no surprise where Lucero made clear in her trial brief that she would be relying on the 2002 deed from Filogonio to Andrew and the subsequent quitclaim deed from Andrew to Victoria's estate. (See *Wishart v. Claudio* (1962) 207 Cal.App.2d 151, 153-154 [finding claimed variance unobjectionable where element of surprise necessary to vitiate pleading for variance is eliminated by plaintiff's pretrial statement clearly specifying reliance on issue as to which claimed variant evidence was admitted].) Likewise, Mayra addressed the significance of the 2002 deed in her trial brief, indicating she was fully aware that the court's ruling might be based on

10

it.[6]  (See *Hayes v. Richfield Oil Corp.* (1952) 38 Cal.2d 375, 382 [finding defendant was not prejudiced by variance where defendant's insistence that issue was not presented by pleadings indicates it was aware the court would permit recovery under that theory].)

Mayra concedes the trial court may allow pleadings to be amended to conform to proof even where a variance is material (see § 469 [if the variance is material, the court may order the pleading to be amended upon such terms as may be just]; see also *General Credit, supra,* 44 Cal.App.3d at p. 850 [properly exercising discretion to allow amendment even though variance was material and substantial]), but argues the trial minutes do not reflect Lucero moving to amend or the trial court ordering an immediate amendment. However, the minutes do reflect that at the close of evidence, the trial court discussed its tentative ruling, heard oral argument, set a deadline for further points and authorities, if any, and set a date that the trial court would take the matter under submission.  Mayra filed a post-trial brief, and Lucero filed her amended petition alleging facts regarding the 2002 deed from Filogonio to Andrew and the subsequent quitclaim deed from Andrew to Victoria's estate. Absent a transcript of the trial, we assume there was no objection by Mayra and/or the court allowed an amendment of the petition to conform to proof

---

[6]    Additionally, "[t]he failure of a party to object to evidence upon the ground of variance between it and the allegations of [her] adversary's pleading is a tacit admission that [she] is not misled by it to [her] prejudice in maintaining [her] action or defense on the merits."  (*Gaffny v. Michaels* (1925) 73 Cal.App. 151, 156-157 (conc. opn. of Finlayson, P.J. & Works, J.).)  While the trial minutes show that Mayra objected to the admission of the 2002 deed, there is no transcript of the trial and nothing in the record showing that Mayra objected on the specific ground of variance. (*Id.* at p. 157 (conc. opn. of Finlayson, P.J. & Works, J.) [Without a transcript "[i]t must be presumed, . . . in support of the judgment, that appellant made no objection . . . upon the ground of variance."].)

11

that was presented at trial. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).)

Accordingly, we conclude there was no material variance between the petition and proof at trial, and even if there was, the trial court did not abuse its discretion in allowing the petition to be amended to allege the 2002 deed from Filogonio to Andrew and the subsequent quitclaim from Andrew to Victoria's estate. As a result, Mayra's statute of frauds argument as to the "1999 Agreement" is irrelevant.

B. *Substantial Evidence Supports the Trial Court's Finding that the 2002 Deed Was Valid*

Assuming Lucero was entitled to rely on evidence of a 2002 deed to prove a transfer of Filogonio's one-seventh interest to Andrew in trust for his mother Victoria, Mayra asserts that the deed is invalid and unenforceable. She argues that the deed did not provide a proper description of the property it purported to transfer.

A deed must adequately describe the property to be transferred in order to be enforceable. (*MTC Financial Inc. v. California Dept. of Tax & Fee Administration* (2019) 41 Cal.App.5th 742, 747 (*MTC Financial*).) "To be sufficient the description must be such that the land can be identified or located on the ground by use of the same." (*Edwards v. Santa Paula* (1956) 138 Cal.App.2d 375, 380.) Extrinsic evidence is admissible to aid in the application of the description to its subject matter, but not for the purpose of completing a description that is inherently not susceptible of application to the ground. (*Ibid.*)

Where the trial court's ruling is based on an interpretation of a deed without the aid of extrinsic evidence, we review the trial court's determination de novo for an error of law. (*MTC Financial*, *supra*, 41

Cal.App.5th at p. 746; *Pear v. City and County of San Francisco* (2021) 67 Cal.App.5th 61, 71.)  When extrinsic evidence is properly admitted to interpret a deed, the trial court's finding must be sustained on appeal if there is substantial evidence, either direct or indirect, contradicted or uncontradicted, which supports that finding.  (*Baker v. Ramirez* (1987) 190 Cal.App.3d 1123, 1133.)  Applying the substantial evidence standard of review, we consider the evidence in the light most favorable to the prevailing party, drawing all inferences in support of the trial court's findings.  (*MTC Financial*, at p. 746.)  "Moreover, it is presumed on appeal that the court, sitting without a jury, did not base its finding on irrelevant evidence where there is competent evidence to support it."  (*Southern California Jockey Club, Inc. v. California Horse Racing Board* (1950) 36 Cal.2d 167, 176.)

Here, the 2002 deed states that "Filogonio Lucero, Son, who erroneously acquired title as Filogonia Lucero, Daughter, hereby GRANT(S) his 1/7th interest as tenant-in-common to, Andrew Hermosillo . . . ."  It then purported to describe the property that was to be transferred in an "Exhibit A."  As the trial court noted, however, there is no "Exhibit A" attached to the 2002 deed.  Even so, the trial court found that the deed was for the disputed share, "which was established both by the parcel number on the face of the Deed, as well as the circumstances underlying its execution."  Because there is no reporter's transcript of the trial, we must presume the record contains substantial evidence to support this finding.  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman*).)

We also find substantial evidence, independent of the unavailable trial transcript, to support the trial court's finding.  Namely, in her verified petition, Lucero identified the property at issue by address, description, and assessor's parcel number:

13

"2. The subject matter of this action is certain income-producing residential real property (the 'PROPERTY') situated in San Diego County, California, commonly known as 705-707 65th St, San Diego, CA 92114, and legally described as:

"The North 90 feet of the real property in the City of San Diego, County of San Diego, State of California, bounded and described as follows:

"All that portion of Lot 39 of Encanto, in the City of San Diego, County of California, State of California, according to Map thereof No. 749, filed in the Office of the County Recorder of San Diego County, May 6, 1893 described as follows:

"Commencing at a point in the West line of said Lot which is 295 feet South from the Northeast corner of said lot 39, said Point of commencement being also the Southwest corner of the land conveyed by Hugo Klauber, et. al, to Abraham Klauber, by Deed recorded in Book 412, Page 287 of Deeds, records of said county; thence Southerly along the West line of said Lot 39 200.0 feet to a point, said point being also the Northwest corner of Lot 23 of Brooklyn Terrace, according to Map thereof No. 1849, filed in the Office of the County Recorder of said San Diego County, August 13, 1925; thence East, parallel to the North Line of said Lot 39, 218.8 feet to a point which is 495 feet South of the North Line of said lot 39, said point being also Southwest corner of Lot 19 of said Brooklyn Terrace; thence Northerly, along a line parallel to the West line of said Lot 39, 200 feet to a point; thence West, along a line parallel to the North line of said Lot 39, 218.8 feet to the Place of Commencement.

"APN 549-10-38-00."

In her verified answer, Mayra admitted the allegations in this paragraph of Lucero's verified petition. Thus, the legal description of the property at issue was undisputed. Mayra does not contend that the

assessor's parcel number on the deed, "A.P.N.: 549-101-38-00", does not correspond to the legal description of the property at issue, and conceded as much in her verified answer.

Mayra relies on *MTC Financial* for the proposition that an assessor's parcel number, by itself, does not necessarily demonstrate the actual, physical location of a property. *MTC Financial*, however, also found "no reason to disagree that a parcel number could theoretically satisfy the law's requirement for sufficient legal description of a property." (*MTC Financial, supra*, 41 Cal.App.5th at p. 749.) In *MTC Financial*, the proponent of the deed offered no demonstration of how the parcel number could have been used to locate the property at issue, and instead argued that no extrinsic evidence was necessary. (*Id.* at p. 750.) By contrast here, the trial court could properly consider facts that Mayra admitted in construing the reference to the assessor's parcel number in the deed.

Mayra argues the trial court improperly used extrinsic evidence to provide the property description, rather than for the proper purpose of applying the description in the 2002 deed to its subject matter. We disagree. The distinction is explained in *Best v. Wohlford* (1904) 144 Cal. 733: "[T]he rule that the description must be certain and definite and sufficient in itself to identify the land, does not exclude evidence for the purpose of applying the description to the surface of the earth, and thus identifying it with the tract in controversy. . . . If the land is described by some name or designation, evidence will be received for the purpose of showing that the tract in controversy was well and generally known by that name or designation." (*Id.* at p. 737.) Here, the assessor's parcel number in the 2002 deed provided a designation for the deed's subject matter, and the verified pleadings serve

15

as substantial evidence to support the trial court's finding that such number referred to the disputed property.

C. *Mayra Cannot Show the Lack of Substantial Evidence to Support the Trial Court's Finding that Andrew Quitclaimed the Disputed Share to Victoria's Estate*

In finding that Andrew conveyed the disputed share to Victoria's estate, the trial court stated "[i]t appears the parties agree that in July of 2020, ANDREW HERMOSILLO quitclaimed Filogonio's share to the Estate of Victoria Lucero, although the court has been unable to locate such a document in the trial exhibits or the court file." Mayra argues there is "absolutely no evidence in the record from which the trial court could conclude there was a 'subsequent conveying' of the Disputed Share from Andrew to [Victoria's] Estate."

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham*, *supra*, 2 Cal.3d at p. 564.) Absent a transcript of a hearing, the reviewing court must assume evidence was taken that would support the trial court's decision. (See *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 ["[I]t is presumed that the unreported trial testimony would demonstrate the absence of error"].)

Because there is no reporter's transcript of the trial, we must presume evidence was presented to support the trial court's finding. (*Foreman*, *supra*, 3 Cal.3d at p. 881.) The court's statement that "[i]t appears the parties agree," does not necessarily mean there should be a formal written stipulation in the record, or that the court was only speculating about such

16

an agreement, or that the court was unable to find any supporting evidence. It could be that counsel's oral statements at trial amounted to an agreement, or that the oral testimony revealed there was no conflicting evidence or disagreement that Andrew quitclaimed the disputed share to Victoria's estate. Indeed, Mayra points to no evidence that Andrew *did not* quitclaim the disputed share to Victoria's estate. (See *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992 ["Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be conclusively presumed correct as to all evidentiary matters"] (emphasis omitted).) Absent an affirmative showing of error, we presume the trial court's order was correct. (*Denham*, *supra*, 2 Cal.3d at p. 564.)

## DISPOSITION

The order is affirmed. Lucero to recover costs on appeal.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

17