[No. B009013. Second Dist., Div. One. Sept. 10, 1985.]

ALFRED HARRIS, Plaintiff and Respondent, v.
THE CITY OF COMPTON et al., Defendants and Appellants.

COUNSEL

Wesley Fendersson, Jr., City Attorney, and Wilmont A. Odom, Deputy City Attorney, for Defendants and Appellants.

Arthur Sherman, Jonathan K. Golden and Nikki Tolt for Plaintiff and Respondent.

OPINION

**HANSON (Thaxton), J.—**

### INTRODUCTION

This is an action arising out of a three-car chain reaction rear-end-type vehicular accident. Trial was by jury which returned a verdict for $500,000 in favor of plaintiff Alfred Harris (plaintiff and/or Harris) and against defendants City of Compton (City) and Jasper J. Jackson, Jr. (Jackson). Defendants City and Jackson appeal.[1] We affirm.

### PROCEDURAL HISTORY

On June 18, 1980, plaintiff Harris filed a complaint in the Municipal Court of the Compton Judicial District seeking $15,000 general damages and special damages for injuries and loss incurred by reason of a three-car chain reaction rear-end-type accident which occurred on March 2, 1980. The complaint named as defendants: City, Jackson (police officer for City), and Stanley B. Fuller (Fuller). Defendant City was sued on a respondeat superior theory, holding it responsible for Officer Jackson's alleged negligence.

---

[1]Pursuant to rule 12a, California Rules of Court, we have augmented the record on appeal by ordering up the superior court file and all exhibits.

On July 25, 1980, defendant City, represented by a deputy city attorney, filed an answer generally denying allegations of the complaint and alleging certain affirmative defenses. City also filed a "Cross-complaint for Subbrogation [*sic*], Property Damage and Indemnity" naming as cross-defendants Stanley Bruce Fuller, as driver, and Nathaniel Brown, as owner, of the 1972 Ford Torino involved in the accident. The cross-complaint sought to recover workers' compensation benefits (temporary, permanent, and medical) paid to police officers Jasper J. Jackson, Jr. and Daniel Correa, and property damage to City's 1978 Chevrolet patrol car in the sum of $458. The cross-complaint also sought from said cross-defendants partial indemnification of a judgment in any amount determined on a comparative fault basis "under the principles enunciated in *American Motorcycle Assn.* v. *Superior Court*, 20 Cal.3d 578 (1978)."

On June 5, 1981, plaintiff Harris' motion to transfer the matter to the superior court was granted. On May 16, 1983, the matter was set for the mandatory settlement conference. On August 10, 1983, the trial date was set for September 12, 1983.

On August 18, 1983, pursuant to a motion filed by plaintiff Harris, the court continued the trial date of September 12, 1983, on the ground that "plaintiff [Harris] must undergo surgery as a result of injuries sustained in the accident" declaring "that plaintiff [Harris] had been advised by Myron Koch, M.D., an orthopedic surgeon, and Eli Blass, M.D. that the disc injury sustained by plaintiff will require a decompressive laminectomy, disectomy, and spinal fusion. Mr. Harris, however, out of necessity, has had to defer the suggested surgical intervention. The surgery was postponed due to the medical condition of his wife (who subsequently died of cancer) and in the interest of carrying [*sic*] for his two minor children (aged 6 and 11) one of whom is retarded, requiring considerable attention."

On September 12, 1983, the court granted plaintiff's motion for a continuance of the trial to May 7, 1984.

On May 7, 1984, the trial by jury was trailed to May 8, 1984, at which time it commenced. The cause was tried on the complaint alone. The issues raised in the cross-complaint were not before the jury. Fuller, named as a defendant in the complaint, was not served and was called as a witness for plaintiff.

On May 16, 1984, the jury, by a vote of nine to three, returned a verdict in favor of plaintiff Harris and against defendants City and Jackson in the sum of $500,000. On June 26, 1984, the court denied defendants City and

Jackson's motion for new trial. On July 7, 1984, defendants City and Jackson timely filed their notice of appeal.

FACTS

The evidence adduced at trial is summarized as follows:

On March 2, 1980, between 4 and 5 p.m., a three-car chain-reaction-type accident occurred at the intersection of Marcelle Street and Long Beach Boulevard in the City of Compton. The intersection was controlled by a tri-light traffic signal and the pavement was wet from rain but visibility was good.

Prior to the accident, the three cars involved in the accident were proceeding generally northbound on Long Beach Boulevard in the number one lane. Plaintiff Harris stopped his 1970 Volkswagen (the lead car) at the intersection of Marcelle Street for the red traffic signal. Defendant Jackson, a police officer on duty for City, brought his patrol car, a Chevrolet owned by City, to a full stop behind plaintiff's Volkswagen. The third car, a 1972 Ford Torino driven by Fuller (a named but unserved defendant) crashed into the rear of the police car propelling it into the rear of plaintiff Harris' car.

Earlier in the afternoon, defendant Jackson and his partner, Officer Daniel Correa, had been patrolling an industrial area and had found two large wooden spools (or tables) outside one of the buildings. They decided to take the spools to the station for booking as "found" property. They put these items in the trunk of their police car with the round part hanging outside the trunk, partially obstructing the taillights of the car. They then secured the trunk with a bungi cord.

Fuller (the named but unserved defendant) called as plaintiff's witness at trial, testified that the police car made a sudden stop and due to the obstruction of the police car's taillights by the wooden spools, he could not measure the distance between his car and the police car and therefore could not stop in time. He also testified that, due to the wet pavement, his brakes locked and he slid into the rear of the police car.

Plaintiff Harris, a construction worker, suffered back injuries as a result. He was diagnosed by his doctors as having a bulging disc which would not heal without major surgery and that he could never resume the hard physical labor required of a construction worker.

ISSUES

On appeal, defendant City and Jackson contend (1) that police officer Jackson violated no duty owed to plaintiff as a matter of law; (2) that there was insufficient evidence in support of the jury verdict; (3) that there was no proximate causation, as a matter of law; and (4) that the jury was not properly directed when it asked for additional instruction during its deliberations.

Plaintiff Harris asks that defendant City be penalized for pursuing a frivolous appeal, and that sanctions be awarded as authorized by Code of Civil Procedure section 907 and rule 26(a), California Rules of Court.

DISCUSSION

I.

Defendant City first complains that the evidence established no violation of duty owed to plaintiff by City's police officer, Jackson. We disagree.

We note, first of all, that "[a]ctionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." [Citation.] The duty of care [is] always related to 'some circumstance of time, place and person' [citation]." (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770].) And, as was explained in *Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36], "[t]he determination of duty is primarily a question of law. [Citations.] It is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' [Citation.] . . . While the question whether one owes a duty to another must be decided on a case-by-case basis [fn. omitted], every case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct. [Citation.] However, foreseeability of the risk is a primary consideration in establishing the element of duty. [Citation.] . . . [¶] [and] foreseeability is a question of fact for the jury. [Citation.]"

Defendant argues specifically that Officer Jackson, in transporting the spools with taillights obscured, was acting in a manner sanctioned by several sections of the Vehicle Code, and thus could not, as a matter of law, have been found in violation of any legal duty owed to plaintiff. The

argument lacks merit. The case was not tried on any theory related to negligence per se, i.e., statutory negligence, but was tried and decided on the basis of common law negligence—which in California involves the duty of care owed to all persons set forth in *Weirum, supra,* 15 Cal.3d 40. Whether or not City's police officer (Jackson) was complying with the Vehicle Code was not in issue at either the pleading or trial stage in the litigation below, and may not be introduced as an issue in the case for the first time on appeal. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 281, p. 4269; *Ernst v. Searle* (1933) 218 Cal. 233, 240 [22 P.2d 715]; *Signal Hill Aviation Co. v. Stroppe* (1979) 96 Cal.App.3d 627, 638 [158 Cal.Rptr. 178].)

It was within the jury's province—and supported by the evidence adduced below—to find that there was a foreseeable risk to other drivers in the manner of transporting the "found" items chosen by the police officer, and that this conduct violated the common law duty of care at issue in the case. We find no error in this determination.

## II.

Defendant City secondly contends there was insufficient evidence in support of the verdict.

A "general principle of appellate practice" is that "[a] judgment or order of the lower court is *presumed correct . . .* error must be affirmatively shown." (6 Witkin, Cal. Procedure (2d ed. 1971) § 235, p. 4225, italics in text.) When, as here, the appealing party questions the sufficiency of the evidence adduced below in support of the judgment (jury verdict), it follows from the presumption stated above that the reviewing court must "consider the evidence in the light *most favorable to the prevailing party,* giving him the benefit of *every reasonable inference,* and *resolving conflicts* in support of the judgment." (6 Witkin, *supra,* § 245, p. 4236, italics in text.) "[T]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury." (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; see also *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920 [101 Cal.Rptr. 568, 496 P.2d 480].)

Here, both the plaintiff and the third driver, Fuller, testified that the trunk of the police car was fully open and that there were two large round objects hanging out of the trunk and over the bumper. Fuller testified that when the police car stopped suddenly in front of him, he could not see the brake lights and consequently was not alerted to brake his own vehicle in time to avoid the collision.

Plaintiff also presented the testimony of an expert, Harry J. Krueper, a consulting civil engineer (educated at UCLA and Berkeley) in the field of traffic movement and specializing in calculations of speed and manueverability by vehicles and accident reconstruction. Krueper testified that he prepared two spools of the approximate size and shape as those in the trunk of the police vehicle, and put them in the trunk of a white 1978 Chevrolet Nova (similar to the police vehicle) to approximate what Fuller saw prior to the collision. Krueper testified that in his opinion the spool tops in the trunk of the police car obstructed its taillights and caused a delay in Fuller's reaction time, which resulted in the police car being struck by the Ford Torino driven by Fuller.

The testimony of witnesses Fuller and Krueper was for the jury to assess, and constituted substantial evidence upon which the jury could and did base a finding of liability. Implicit in that finding was that the police officer of defendant City had not conducted himself with a reasonable amount of prudence and had thus violated the legal duty of care owed to plaintiff.

### III.

Defendant City next argues that the accident was occasioned by Fuller's lack of care (i.e., faulty brakes and lack of attentiveness), rather than by any conduct of their police officer, and that the judgment should be reversed. As previously discussed, the breach of duty by a defendant must proximately cause the harm suffered by the plaintiff before a defendant can be held liable for said harm. "Under well-established common law principles, a negligent tortfeasor is generally liable for all damage of which his negligence is *a* proximate cause; stated another way, in order to recover damages sustained as a result of an indivisible injury, a plaintiff is not required to prove that a tortfeasor's conduct was *the sole* proximate cause of the injury, but only that such negligence was *a* proximate cause. [Citations.]" (Italics original.) (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 586 [146 Cal.Rptr. 182, 578 P.2d 899].)

Here, the jury was fully instructed on the law governing proximate cause. As BAJI No. 3.77 on concurring causes (given to the jury) observes, "[t]here may be more than one legal cause of an injury." That instruction goes on to say that where the negligence of two or more persons contributes to the harm to the plaintiff, the conduct of each is regarded as the legal cause. This is a correct statement of the law. It allows a plaintiff to recover from joint or concurrent tortfeasors or choose to prosecute his claim against only one of them. (See, 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 624, pp. 2906-2907.)

The jury impliedly found that the conduct of Officer Jackson, in driving a police vehicle with obstructed taillights, contributed to plaintiff's injuries as *a* legal cause. We uphold that finding.

## IV.

■ Defendant City finally argues that the jury was not adequately instructed when, during its deliberations, it sent a message to the judge asking for information about some provisions in the Vehicle Code concerning rear view mirrors.

The jury requested in writing: "Is it legal to drive a car on a California highway with the view of the rear view mirror obstructed with one side view mirror? Question: Are there side view mirrors, one on each side, on a 1978 Nova police car?"

The court replied: "Question #1—You must decide the facts within the law already given to you. Question #2—there was no evidence presented on that issue."

Defendant City also asserts in its brief that the judge made the above response outside of the presence of counsel, which was in contravention of Code of Civil Procedure section 614. That section requires additional instruction of the jury to take place only in the presence of counsel or after notice to counsel.

When, as here, the appealing party claims that the jury has been misdirected, it must appear that the misdirection was substantial and prejudicial, i.e., materially affecting the outcome of the matter. An examination of the entire cause must lead to the conclusion that the error complained of has resulted in a miscarriage of justice; only then is reversal compelled. (Code of Civ. Proc., § 475; Cal. Const., art. VI, § 13.)

It is not clear from the record before us who was actually present when the questions asked by the jury during deliberations were answered; the parties do not agree upon this point. In view of our analysis of the case, we cannot say that the trial court improperly advised the jury in response to its request for additional information. If error was committed in communicating to the jury outside the presence of counsel, we deem it harmless under the circumstances.

## V.

■ Plaintiff has asked us to impose sanctions on defendant City for taking a frivolous appeal with the purpose of delaying the day of reckoning

for defendant City. We are authorized both by statute (Code of Civ. Proc., § 907) and rule 26(a), California Rules of Court, to impose such sanctions. Our state Supreme Court has approved this method of discouraging unnecessary resort to the appellate process for purposes of delay or harassment. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179].) *Flaherty,* however, cautions reviewing courts to resolve doubts in favor of those seeking review. We cannot say that defendant City's arguments here were entirely devoid of merit, in the sense that we understand triggers the sanctions process. We accordingly resolve the doubt in favor of defendants City and Jackson.

DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Lucas, J., concurred.

**HANSON (Thaxton), J.** Concurring.—Affirmance of the instant case is required under well-established rules of appellate review and controlling decisional law as discussed in the lead opinion. However, there are troubling aspects of this case by applying current decisional law which appear to strain reason, and run afoul of notions of basic fairness which should be brought to the attention of the state Legislature.

Here, the apportionment of fault as between named defendants Jackson and Fuller was never determined by a trier of fact since defendant Fuller was not served with the complaint and the cross-complaint was not tried with the basic action. (See Procedural History in the lead opinion.) However, my review of the entire record (augmented by the superior court file and all exhibits) leads me to conclude, after giving full faith and credit to that which constituted substantial evidence supporting the verdict as discussed in the lead opinion, that any fault attributable to Officer Jackson as a legal cause is minimal (in my view, less than 5 percent); while fault attributable to named, unserved, and presumably insolvent defendant Fuller was at least 95 percent.[1] Yet, pursuant to *American Motorcycle Assn.* v.

---

[1]Fuller, who was employed with his brother doing lawn service, was called as a witness by plaintiff's counsel and testified that he was not aware that plaintiff's Volkswagen was involved in the accident until three weeks before trial; that he just became aware of this when one of plaintiff's attorneys personally subpoenaed him for trial; that he had bought the 1972 Grand Torino he was driving from his brother-in-law, Nathaniel Brown, about six months before the accident; that he was behind the police car "about a car and a half or so" and traveling "about 30, 25 to 30 miles per hour;" that he was aware that the traffic signal was red but that the police car "made a sudden stop" and he did not see the red taillights on the patrol car because some round spools (or table tops) obstructed his view of them; that he "probably could have avoided hitting the car in front—if the streets hadn't been wet" and his brakes locked; and that he was not injured in the accident although the front of his car sustained damage to the headlights and grill.

The police, who came to the scene, cited Fuller for driving without a license; his license having been previously revoked in 1978 for driving under the influence of alcohol.

*Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], the besieged taxpayers of the City of Compton who were not involved in the accident (applying the principle of respondeat superior) must pony up 100 percent of the half-million dollar judgment.

Such a result cannot be reconciled with the rationale in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], bottomed on the proposition that "responsibility and liability for damage [shall be assigned] in direct proportion to the amount of negligence of each of the parties." (*Id.*, at p. 829.)

If it is reasonable and fair in single plaintiff and defendant cases to hold that the extent of fault should govern the extent of liability, as in *Li* v. *Yellow Cab Co.*, *supra*, 13 Cal.3d 804, is it reasonable, fair and good public policy, in multiple defendant cases, to continue to hold a solvent defendant with minimum fault liable for the full judgment (i.e., pay the major unserved or insolvent tortfeasor[s] portion of the judgment) as held in *American Motorcycle Assn.*, *supra*, 20 Cal.3d 578?

In my view, this case is a prime example justifying the concerns expressed by Justice William P. Clark in his dissenting opinions in *Li* v. *Yellow Cab Co.*, *supra*, 13 Cal.3d at pages 832-834 and *American Motorcycle Assn.* v. *Superior Court*, *supra*, 20 Cal.3d at pages 608-617, in which he urged legislative review and action. In *Li*, the state Supreme Court judicially abrogated the defense of contributory negligence[2] and adopted in its place a system of "pure" comparative negligence.

The *Li* court, in rejecting the doctrine of contributory negligence, said: "The basic objection to the doctrine [of contributory negligence]—grounded in the primal concept that in a system in which liability is based on fault, the extent of fault should govern the extent of liability—remains irresistible to reason and all intelligent notions of fairness." (*Li* v. *Yellow Cab Co.*, *supra*, 13 Cal.3d at p. 811.)

The *Li* court in rationalizing its adoption of a "pure" comparative negligence rule enunciated the principle that the extent of liability must be

---

[2]The traditional doctrine of contributory negligence (an "all or nothing" defense), of common law origin, was enacted into statutory law in California in 1872 in Civil Code section 1714. This doctrine was based on the principle that one should not recover for damages brought upon oneself which in turn was underpinned by the traditional Anglo-Saxon (i.e., American) emphasis on acceptance of individual responsibility. The doctrine came increasingly under fire by legal writers as being too harsh and inequitable because it failed to distribute responsibility in proportion to fault.

governed by the extent of fault. The court said, "*liability for damage will be borne by those whose negligence caused it in direct proportion to their respective fault* [fn. omitted], (*id.,* at p. 813; italics added) and "*the fundamental purpose of [the rule of pure comparative negligence] shall be to assign responsibility and liability for damage in direct proportion to the amount of negligence of each of the parties.*" (*Id.,* at p. 829; italics added.)

Justice Clark in his strong dissent in *Li* (joined by Justice Marshall McComb) asserted that the court's action invaded the province of the Legislature. He accurately pointed out that California is a code state and that Civil Code section 1714 codifies the defense of contributory negligence and that the power to enact and amend statutes is constitutionally entrusted to the Legislature and not the judiciary. He further correctly noted that the court is not an investigatory body or equipped, as is the Legislature, to fairly appraise the merits of these competing systems. (See *Li* v. *Yellow Cab, supra,* 13 Cal.3d 804, 832-834.)

Three years after handing down *Li,* the state Supreme Court in *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, was faced with the issue of joint and several liability, i.e., whether a plaintiff or a solvent defendant should bear the portion of the loss attributable to unknown or judgment proof defendants.

The *American Motorcycle* court declared that its adoption of the "pure" comparative rule in *Li* did not warrant the abolition of joint and several liability of concurrent tortfeasors. The court held that a concurrent tortfeasor whose negligence is *a* proximate cause of an indivisible injury remains liable for the total amount of damages, diminished only in proportion to the amount of negligence attributable to the person recovering.

In light of the principles underlying its previously adopted rule of comparative negligence in *Li,* the *American Motorcycle* court modified the common law equitable indemnity doctrine to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis. However, this modification of the common law equitable indemnity doctrine does not solve the problem of a slightly responsible target "deep pocket" defendant's requirement to pay all of the damage award since the tortfeasor[s] primarily at fault may be judgment proof.

Justice Clark in his dissent in *American Motorcycle* stated that the majority's "attempted rationale for rejection [in *American Motorcycle*] of the *Li* principle [the extent of liability must be governed by the extent of fault]

insofar as it is based on a newly discovered public policy is entitled to little weight. The public has no such policy and any attack on the principle based on logic or abstract notions of fairness fail. . . . [¶] If not applied across the board the *Li* principle should be abandoned. The reason for abandonment applies not only to multi-party cases but also to two-party cases, warranting total repudiation of the principle, not merely the majority's partial rejection" (*id.*, at p. 615) and that any new policy should be left to the Legislature.

Justice Clark stated: "I do not suggest return to the old contributory negligence system. The true criticism of that system remains valid: one party should not be required to bear a loss which by definition two have caused. However, in departing from the old system of contributory negligence numerous approaches are open, but the Legislature rather than this court is the proper institution in a democratic society to choose the course." (*Id.*, at p. 616.)

He concluded: *"Again, it must be urged that this is a subject to which the Legislature should address itself. . . .* The two most modern trends of compensating accident victims run in directly contrary approaches—the non-fault approach where negligence may be ignored and the comparative fault approach where the quantum of negligence is to be meticulously divided among the parties. *No area of the law calls out more for a clear policy established by democratically elected representatives."* (*Id.*, at p. 617; italics added.)

Justice Clark recommended that "a full evaluation should be made of society's compensation to accident victims through our tort system in comparison to all other means used by society to compensate victims. A study should include such matters as the relative workings of the liability insurance system in providing benefits, disability insurance and employer benefits, medical insurance, workers' compensation, insurance against uninsured defendants, Medicare, Medi-Cal and the welfare system. . . . The evidence gathering and hearings necessary for the requisite study are within the capabilities of the Legislature; this court is institutionally incapable of undertaking it." (*Id.*, at pp. 612-613.)

That the Legislature is the proper and only branch to establish such public policy is unassailable. Indeed, a chief reason why California became a code state was in recognition of the doctrine of separation of powers embodied in our federal and state Constitutions.

" 'There are only certain propositions which have become maxims of government, one of which is that the legislative and judicial departments should be kept distinct, or in other words, that the same person should not be both law-giver and judge. There is no need of arguing about it. The maxim is founded on philosophy and experience. It has taken ages of struggle to establish it. And here it is. We profess to take it for absolute truth; we talk of it as one of the fundamental doctrines of modern government; we write it at the head of our constitutions; but we violate it every hour that we allow the judges to participate in the making of the laws.' " (See Palmer & Selvin, The Development of Law in California (1954) p. 38, quoting from David Dudley Field (1886) 20 Am.L.Rev. 1.)

The purpose and benefits to be derived from the Legislature addressing this vexing problem are reflected in the views expressed by Thomas W. Cooley as quoted in Palmer and Selvin, The Development of Law in California, *supra,* at pages 41-42: " 'Benefits are expected to be realized from codification as follows: It will relieve the law of very many uncertainties and doubts over which judges and lawyers now stumble and disagree; and which make legal advice and judgment uncertain; it will cover many points upon which hitherto there have been no judicial decisions, so that the law is still unknown, and when declared under the common-law system would have retroactive and presumably unjust operation; it will render innumerable and confused decisions, now constantly appealed to as precedents, unimportant, thereby relieving lawyers and judges of the onerous burden of studying them; it will render the administration of the law more easy, speedy and certain; it will stop the process of judicial legislation which now goes on at the will of the judges, and remit the making of the law to the department of the government to which the duty properly belongs, and it will put some check upon the great multiplication of law reports and treatises. It can not be denied that these are desirable ends; and if they were certain or even likely to be attained, provision for codification would be the first duty of the law-maker.' "

Having established (1) that the Legislature and not the judiciary is the constitutionally mandated department of government charged with the responsibility of setting public policy which impacts so drastically on society concerning compensation of accident victims through our tort system, and (2) that the Legislature is far better equipped than the courts to investigate and reconcile the myriad of competing interests, the question is: Is it not time for the state Legislature to reevaluate the complex rules governing compensation of victims injured in tort cases involving multiple defendants—named, named but not served, unnamed, settled out, or insolvent in

the wake of *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804 and *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578?

A petition for a rehearing was denied October 8, 1985, and appellants' petition for review by the Supreme Court was denied December 4, 1985.