[Nos. E003310, E003792. Fourth Dist., Div. Two. Mar. 14, 1988.]

GLENDON DANIELSON et al., Plaintiffs and Appellants, v. ITT INDUSTRIAL CREDIT COMPANY et al., Defendants and Respondents.

COUNSEL

Stewart & Harris and William S. Harris for Plaintiffs and Appellants.

Berman & Clark, Mark Wood, Paula A. Daniels, Caprice L. Collins, Shostak & Epstein and Lawrence Shostak for Defendants and Respondents.

## OPINION

HEWS, J.—This is a consolidated appeal from judgment entered after the trial court granted defendants' motions to dismiss plaintiffs' complaint pursuant to sections 583.410 and 583.420, subdivision (a)(1)[1] for failure to serve summons and complaint within two years in favor of defendants ITT Industrial Credit Company (ITT), Inland Kenworth, Inc. (Inland), and R & R Distributing Company (Distributing Co.), R & R Truck Brokerage (Truck Brokerage) and Roger Schwingler (Schwingler) and against plaintiffs Glendon and Maxine Danielson (the Danielsons).

The issue on appeal is: Did the trial court abuse its discretion in granting defendants' motions to dismiss for failure to serve within two years pursuant to sections 583.410 and 583.420 when it (1) failed to exclude the time during which the action was stayed because it was an asset of the Danielsons' bankruptcy estate? (2) failed to exclude the time during which service was impossible, impracticable or futile because the Danielsons lacked standing to prosecute their lawsuit?

---

[1] All future code references are to the California Code of Civil Procedure unless otherwise specified.

## FACTS

The following factual circumstances are alleged: Between February and June of 1979, the Danielsons negotiated with Joe Morse (Morse), a salesman for Inland, for the purchase of a Kenworth tractor and Utility dry van trailer (tractor-trailer). In mid-June Morse informed the Danielsons they could not qualify for a loan to purchase the tractor-trailer. However, the Danielsons, Morse, Inland, ITT (the credit company) and Matlock and Matlock Transportation (the trucking company for which Glendon Danielson had been driving) orally agreed that the Danielsons would lease the tractor-trailer from ITT and that Matlock Transportation would be the nominal lessee for the first six months of the lease, at which time the Danielsons would be substituted and named as lessees on the master lease in place of Matlock Transportation. According to the agreement, Inland provided the tractor-trailer; the Danielsons agreed to pay all lease payments and other expenses; ITT had the right to claim investment tax credit; and Matlock and Matlock Transportation had the right to claim depreciation on the tractor-trailer. Equity in the tractor-trailer would belong to the Danielsons.

Subsequently, ITT, Inland, Matlock and Matlock Transportation entered into the master lease, with Matlock Transportation as the lessee of the tractor-trailer. Pursuant to a separate permanent lease agreement entered into in July 1979 by the Danielsons and Matlock and Matlock Transportation, Glendon Danielson drove the tractor-trailer primarily for Matlock Transportation.

After six months had elapsed, ITT refused to substitute the Danielsons for Matlock Transportation on the lease. Matlock Transportation and the Danielsons signed an agreement dated November 26, 1980, whereby Matlock Transportation, as lessee, transferred and the Danielsons assumed all rights and obligations under the master lease. Matlock also agreed to be guarantor on the contract. ITT did not sign a consent to the assignment. However, in May 1981, almost two years after the original master lease was signed, ITT transferred title from Matlock Transportation to the Danielsons. Four months later, ITT transferred title from the Danielsons back to Matlock Transportation. Subsequently, ITT's credit manager told the Danielsons that title to the tractor-trailer was never transferred to them and never would be and that ITT was unaware of any oral agreement to change title on the tractor-trailer from Matlock Transportation to the Danielsons six months into the lease.

In June 1981, Distributing Co., Truck Brokerage, and Schwingler assisted Inland and others in repossessing the tractor-trailer and other equipment from the Danielsons.

## Procedural History

The Danielsons filed a Chapter 7 petition in the United States Bankruptcy Court in San Bernardino in June 1982. In the bankruptcy schedule under "contingent and unliquidated claims" the Danielsons listed potential litigation claims against ITT, Inland, Matlock, Matlock Construction, Distributing Co., Truck Brokerage, and Schwingler for breach of contract, fraud, conversion, interference with business and constructive trust. The bankruptcy court discharged the Danielsons' debts in November 1982, but the bankruptcy trustee did not close the case or pursue the Danielsons' state court litigation claims. The Danielsons filed this state court lawsuit as plaintiffs in propria persona on December 1, 1982. The trustee did not intervene in or prosecute the action.

In the fall of 1984, the Danielsons engaged an attorney to represent them in the state court litigation. The Danielsons filed a substitution of attorney and a first amended complaint in November 1985 and served all defendants with summons and complaint in late November 1985, days before the running of the three-year statute for service of summons.

ITT brought its motion to dismiss the Danielsons' complaint pursuant to sections 583.410 and 583.420, subdivision (a)(1) for failure to serve within two years. In March 1986 the trial court granted ITT's motion and entered judgment in favor of ITT and against the Danielsons. The trial court denied the Danielsons' subsequent motion to vacate judgment on May 5, 1986, and the Danielsons appealed from the judgment in case number E003310. A month later, in June 1986, Inland brought its motion to dismiss the Danielsons' complaint for failure to serve within two years, which the trial court granted. Later the Danielsons filed an amended notice of appeal in case number E003310, amending to add the appeal from the trial court's granting of Inland's motion to dismiss.[2]

In September 1986 the Danielsons brought a motion in bankruptcy court for an order that the trustee had abandoned the Danielsons' state court claims. The bankruptcy court denied the motion, finding that the trustee had not abandoned the lawsuit "Danielson v. Matlock" (this case) pending in San Bernardino County Superior Court and that this lawsuit remained the property of the debtor's bankruptcy estate. In October 1986, in this state court action, Distributing Co., Truck Brokerage and Schwingler brought

[2] Though the Danielsons did not file a notice of appeal from the court's granting of defendant Inland's motion to dismiss, they did file an amended notice of appeal in case number E003310, amending it to add the appeal from the trial court's granting of this second motion to dismiss. We deem this amended notice of appeal to be the notice of appeal of Inland's motion to dismiss, as that is what the parties assumed.

their motion to dismiss the Danielsons' complaint for failure to serve summons in two years, which the trial court also granted. The Danielsons appealed in case number E003792. The appeal in case number E003792 has been consolidated with the appeals in case number E003310.

Additional facts concerning specific issues are set out in the discussion below.

## DISCUSSION

### I

#### *Stay*

◼ The Danielsons contend that the trial court abused its discretion in granting defendants' motions to dismiss for failure to prosecute pursuant to section 583.410 and for failure to serve summons within two years pursuant to section 583.420, when it failed to exclude the time during which the action was stayed because it was an asset of their bankruptcy estate.

◼ Dismissals for failure to serve summons within two years are governed by sections 583.410 and 583.420, which provide that "[t]he court may in its discretion dismiss an action for delay in prosecution . . ." (§ 583.410) where "[s]ervice is not made within two years after the action is commenced against the defendant." (§ 583.420, subd. (a)(1).) When ruling on two-year discretionary dismissals for failure to serve summons, the court must consider the statutory excuses that apply to computation of time for mandatory dismissals for failure to serve summons in three years (§§ 583.420, subd. (b), 583.240) and the same factors it considers when deciding a motion for delay in bringing a case to trial. (§§ 583.420, subd. (b), 583.310; Cal. Rules of Court, rule 373(e).) Section 583.240, subdivision (b) provides that when computing time within which service is to be made, the court shall exclude the time during which "the prosecution of the action or proceedings in the action was stayed and the stay affected service."

◼ As a general rule, a judgment or order of the lower court is presumed correct (*Harris* v. *City of Compton* (1985) 172 Cal.App.3d 1, 9 [217 Cal.Rptr. 884]) and " ' ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent . . . ." ' " (*Wilson* v. *Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563 [194 Cal.Rptr. 773, 669 P.2d 9], citing *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) ◼ The motion to dismiss for failure to serve summons within two years is addressed to the trial court's sound legal

discretion (§ 583.410; Cal. Law Revision Com. com., Deerings Ann. Code Civ. Proc., § 583.420 (1988 pocket supp.) p. 102; see *Luti* v. *Graco, Inc.* (1985) 170 Cal.App.3d 228 [215 Cal.Rptr. 902]; *Salas* v. *Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 346 [228 Cal.Rptr. 504, 721 P.2d 590]) and the burden is on the appellant to establish an abuse of discretion. (*Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 566.) " ' "[E]rror must be affirmatively shown." ' " (*Wilson* v. *Sunshine Meat & Liquor Co., supra,* 34 Cal.3d at p. 563, citing *Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 564.) " '[U]nless a clear case of abuse is shown . . . a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 566, citing *Loomis* v. *Loomis* (1960) 181 Cal.App.2d 345, 348-349 [5 Cal.Rptr. 550]; see *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].) " '[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered. [Citations.]' " (*Barajas* v. *USA Petroleum Corp.* (1986) 184 Cal.App.3d 974, 987-988 [229 Cal.Rptr. 513], citing *People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].)

██  The Danielsons argue that because an action could only be brought by the real party in interest (§ 367), their prosecution of this action was stayed during the time it was an asset of their bankruptcy estate. The Danielsons have not cited, nor has our research revealed, any statute or case which supports their argument.

The Bankruptcy Act provides that the commencement or continuation of any legal proceeding *against the debtor* is automatically stayed by the filing of a petition in bankruptcy, until adjudication or dismissal of the petition. (11 U.S.C. § 362.) However, with one exception found in 11 United States Code section 108 and inapplicable here, nothing in the Bankruptcy Act tolls a debtor's cause of action. Title 11 United States Code section 108 of the Bankruptcy Act operates to toll the statute of limitations for filing an action by the trustee when the debtor files a petition in bankruptcy.[3] On its face

---

[3] Title 11 United States Code section 108 (a) of the Bankruptcy Act provided: "If applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor may *commence an action,* and such period has not expired before the date of filing of the petition, *the trustee* may commence such action only before the later of—[¶] (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and [¶] (2) two years after the order for relief." (Italics added.)

In 1984, this subdivision was amended and clarified, as follows: "If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may *commence an action,* and such period has not expired before the date of the filing of the petition, the *trustee* may commence such action only before the later of—[¶] (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or [¶] (2) two years after the order for relief." (Italics added.)

this section 108 (a) is unambiguous. It only tolls statutes of limitations for commencing actions and is not applicable to toll the time within which plaintiff has to serve summons under the discretionary dismissal statutes. Title 11 United States Code section 108 (b) and (c) are equally inapplicable; they apply exclusively to individuals protected under chapter 13, section 1301 of the Bankruptcy Act.[4]

The Danielsons cite *Wood* v. *Lowe* (1974) 39 Cal.App.3d 296 [114 Cal.Rptr. 69], in support of their argument that their prosecution of the action was stayed from December 1982 through November 1985 because the trustee had not abandoned their cause of action. Their reliance on *Wood* is misplaced. *Wood* did not discuss the issue of whether section 583.420 was stayed during the time the action was an asset of the bankruptcy estate. Rather, the court in *Wood* stated that "all causes of action possessed by a bankrupt vest in the trustee and that, absent an 'abandonment,' only he can prosecute them." (*Id.* at p. 299.)[5]

Additionally, under the Bankruptcy Act the trustee is not stayed from prosecuting actions. He "may intervene in the action or may move to be substituted as party plaintiff." (*Wood* v. *Lowe, supra,* 39 Cal.App.3d at p. 301.) The Danielsons also were not in any way prevented by a stay from petitioning the bankruptcy court for relief in the form of authorization to maintain the suit (*People* v. *Kings Point Corp.* (1986) 188 Cal.App.3d. 544, 549 [233 Cal.Rptr. 227]), an order permitting the trustee to prosecute the case in the plaintiff's name (*Wood* v. *Lowe, supra,* 39 Cal.App.3d at p. 301) or a formal order of abandonment. (11 U.S.C. § 554; 11 U.S.C. Bankr. Rules, rule 6007(b).)

In this action, ITT brought its motion to dismiss in March 1986. Inland brought its motion to dismiss in June 1986. Prior to opposing these motions, the Danielsons had not sought any form of relief from the bankruptcy court which would have given them standing to prosecute this action. Neither had the bankruptcy case been closed nor had the trustee sought a formal order of abandonment, either of which would have given the Danielsons standing to prosecute. However, the Danielsons *did* prosecute the action from 1982 through June 1986 when it was an asset of the bankruptcy estate by (1) filing the complaint in December 1982, (2) filing an amended complaint and a substitution of attorney in November 1985, (3) serving defendants in November 1985, (4) filing opposition papers to demurrers, motions to strike, and motions to dismiss in 1986, and (5) filing these appeals.

---

[4] As amended in 1984, these subdivisions also apply to individuals protected under chapter 12, section 1201 of the Bankruptcy Act. As amended, the statute remains inapplicable to the Danielsons.

[5] See discussion of *Wood*, footnote 6, *infra*.

In their opposition to these motions and now on appeal, the Danielsons argue that they were "stayed" from prosecuting the action from the time they filed the complaint until they served the defendants in late 1985. Their argument is unpersuasive.

The Danielsons were not at any time under a stay order prohibiting them from prosecuting this state court action. From December 1982 through June 1986 they did not seek affirmative relief from the bankruptcy court, which would have permitted them to prosecute this action. However, apparently notwithstanding the above, the Danielsons did prosecute the action whenever it was in their interests to do so.

The Danielsons next argue that the bankruptcy court's denial of their September 1986 petition for an order that the trustee had abandoned the Danielsons' state court claims and its finding that the trustee had not abandoned this state court action affirms that the Danielsons were stayed from prosecuting this action from December 1982 to December 1985. We disagree.

As stated above, prior to September 1986, the Danielsons were not under a stay order which prevented them from prosecuting the state action. In addition, the bankruptcy court's order of September 1986 was not a stay order which of itself prohibited the Danielsons from prosecuting this action. Nor did the Danielsons understand it to be a stay order. Subsequent to the bankruptcy court's order denying the order of abandonment, Distributing Co., Truck Brokerage and Schwingler filed a motion to dismiss the Danielsons' complaint for failure to serve summons in two years. Notwithstanding the bankruptcy court's order denying their motion for abandonment, the Danielsons, not the trustee, opposed this motion, and they also filed a notice of appeal from the judgment entered after the granting of this motion to dismiss.

We find absurd the Danielsons' argument that the bankruptcy court's order denying that the trustee had abandoned their state action somehow retroactively denied them the ability to prosecute the action between December 1982 and October 1985, but permitted them standing to file the lawsuit and to prosecute it beginning in November 1985 when they served the defendants.

The prosecution of this action was not stayed. Therefore, we conclude the trial court did not abuse its discretion in failing to exclude any time pursuant to section 583.240, subdivision (b), when it granted defendants' motions to dismiss.

## II

### *Impossibility*

The Danielsons next contend the trial court abused its discretion in granting defendants' motions to dismiss for failure to serve summons in two years when it failed to exclude the time during which service was "impossible, impracticable, or futile" because they lacked standing to prosecute their lawsuit, which was an asset of their bankruptcy estate.

As stated above, when considering motions to dismiss for failure to serve summons within two years brought pursuant to sections 583.410 and 583.420, subdivision (a)(1), the court must consider the statutory excuses that apply to computation of time for motions to dismiss for failure to serve summons in three years. (§ 583.420, subd. (b).) Pursuant to section 583.240, subdivision (d), when computing time within which service is to be made, the court shall exclude the time during which "[s]ervice, for any other reason, was impossible, impracticable, or futile due to causes beyond the plaintiff's control." The question is one of whether service of process is rendered "impossible, impracticable or futile" under the circumstances and the statute must be strictly construed. (See *Valerio* v. *Boise Cascade Corp.* (1986) 177 Cal.App.3d 1212, 1220 [223 Cal.Rptr. 592]; Cal. Law Revision Com. com., Deerings Ann. Code Civ. Proc., § 583.240 (1988 pocket supp.) pp. 97-98.)

### A. *The ITT and Inland Motions to Dismiss*

The Danielsons argue that the trial court should not have counted the two years, eleven months (or, at a minimum, eleven months) during which it was impossible for them to serve defendants ITT and Inland because the Danielsons' claim was an asset of the bankruptcy estate and they did not have standing to prosecute it.

"Every action must be prosecuted in the name of the real party in interest. . . ." (§ 367.)  (7)  "11 U.S.C. § 541(a)(1) (1982) defines property of the bankruptcy estate to include 'all legal or equitable interests of the debtor in property as of the commencement of the case.' The scope of section 541 is broad, and includes causes of action. [Citations.]" (*Sierra Switchboard Co.* v. *Westinghouse Elec. Corp.* (9th Cir. 1986) 789 F.2d 705, 707.) The trustee and not the bankrupt has the legal capacity to sue on a cause of action which has vested in the trustee. " 'After adjudication of bankruptcy and the appointment and qualification of a trustee, the bankrupt is without right to institute or prosecute an action, cross-action, or proceeding except on a

cause of action not passing to a trustee.' [Citations.]" (*Heffron* v. *Rosenberg* (1942) 51 Cal.App.2d 156, 159 [124 P.2d 74]; see *Wood* v. *Lowe, supra,* 39 Cal.App.3d at p. 299; *Estate of Aldrich* (1950) 35 Cal.2d 20, 23 [215 P.2d 724, 19 A.L.R.2d 885].) If, however, the trustee, in exercising his right of election to accept or administer property burdensome to the estate, abandons his claim, "the bankrupt may sue on the claim in his own name." (8 C.J.S. (1962) Bankr., § 194, p. 987; see *Sierra Switchboard Co.* v. *Westinghouse Elec. Corp., supra,* 789 F.2d at p. 709.)

■ The Danielsons cite *Wood* v. *Lowe, supra,* 39 Cal.App.3d 296, in support of their argument that "all causes of action possessed by a bankrupt vest in the trustee and that, absent an 'abandonment,' only he can prosecute them." (*Id.,* at p. 299.) The Danielsons argue that because they were precluded from prosecuting the action, at least until abandonment or intervention by the trustee, neither of which occurred, they lacked standing to serve summons due to circumstances beyond their control.

In response, the defendants argue that once the Danielsons filed the lawsuit, it was incumbent upon the Danielsons to petition the bankruptcy court to compel the trustee to maintain the action or authorize them to prosecute it, and thus service was within the Danielsons' control. (*People* v. *Kings Point Corp., supra,* 188 Cal.App.3d at pp. 549-550.) We agree.

When the Danielsons filed their bankruptcy petition, they listed the potential claims against defendants as an asset of their estate. At that time, their causes of action against defendants vested in the trustee. The trustee did not pursue the Danielsons' state court claims by either intervening or moving to be substituted in as party plaintiff. He also did not close the bankruptcy estate, by which action the claim would have been deemed abandoned (11 U.S.C. § 554(c)); nor did the trustee seek a formal order of abandonment (11 U.S.C. Bankr. Rules, rule 6007(a).) The situation, however, was not totally out of the Danielsons' control. The Danielsons could have sought relief from the bankruptcy court, such as (1) an order permitting the trustee to prosecute this lawsuit in the plaintiff's name (*Wood* v. *Lowe, supra,* 39 Cal.App.3d at p. 299), (2) an order compelling the trustee to maintain the action (*People* v. *King's Point, supra,* 188 Cal.App.3d at p. 549), (3) an order authorizing the Danielsons to prosecute the action on their own behalf, or (4) a formal order of abandonment. (11 U.S.C. § 554 (b); 11 U.S.C. Bankr. Rules, rule 6007(b).)

The Danielsons did not seek any of the above relief prior to serving defendants. They filed the lawsuit in December 1982, at which time it was an asset of their bankruptcy estate. Then they waited almost three years without taking any action. Subsequently, without authorization from the

bankruptcy court, they began prosecution of this lawsuit by filing a substitution of attorney and a first amended complaint, and they also served summons and complaint on all defendants. To explain their fortuitously gained standing to prosecute on the eve of the running of the three-year statute for service of summons, the Danielsons argued in their opposition to ITT's and Inland's motions to dismiss that the trustee by his inaction had abandoned their state court claims.

However, "[s]ince 1973 it has been the law that as long as a bankruptcy proceeding is still open *there can be no abandonment* by the trustee of any property of the estate, including causes of action, *without formal order of the bankruptcy court authorizing such abandonment*." (*In re Teltronics Services, Inc.* (E.D.N.Y. 1984) 39 Bankr. 446, 449; see 11 U.S.C. § 554.) (Italics added.)[6] Additionally, new rules of bankruptcy procedure took effect on August 1, 1983. Rule 6007 of the new rules provides a specific procedure for seeking an order of abandonment pursuant to 11 United States Code section 554.[7] The trustee may seek a formal order of abandonment of property of the estate after notice to the creditors (11 U.S.C. Bankr. Rules, rule 6007 (a)) or a party in interest may file and serve a motion requiring the trustee to abandon the property of the estate. (11 U.S.C. Bankr. Rules, rule 6007 (b).) The court sets a hearing for determination of the issues if any party objects to the trustee's proposed abandonment of the asset or if a party in interest files a motion for an order requiring the trustee to abandon the property. (11 U.S.C. Bankr. Rules, rule 6007(c).)

Based on the foregoing, the trial court could have reasonably concluded that service was not beyond the Danielsons' control during the two years and eleven and one-half months in which they sat on their rights. Prior to serving defendants in November 1985, the Danielsons did not seek any affirmative relief from the bankruptcy court as provided by the bankruptcy code or suggested by relevant case law. Instead they chose to serve defendants with summons and complaint, when, by their own logic, the Danielsons still did not have standing to prosecute their claims. If, as they argued, the trustee by his inaction had abandoned the Danielsons' claims at the time they served defendants, they could have served defendants at any time after

---

[6] *Wood* v. *Lowe, supra,* 39 Cal.App.3d 296, is cited by the Danielsons in support of their argument that a formal order is not required. *Wood* discussed abandonment of assets of the bankruptcy estate under the Bankruptcy Act in effect in 1972. The Bankruptcy Act was amended in 1973 and again in 1979.

[7] Title 11 United States Code Bankruptcy Rules, rule 6007 provides, in relevant part: "[¶] (a) Unless otherwise directed by the court, the trustee . . . shall give notice of a proposed abandonment . . . . [¶] (b) A party in interest may file and serve a motion requiring the trustee . . . to abandon the property of the estate. [¶] (c) If a timely objection is made as prescribed by subdivision (a) of this rule, or if a motion is made as prescribed by subdivision (b), the court shall set a hearing on notice to the persons as the court may direct."

they filed their complaint. It must have been apparent to the Danielsons from the time they filed their lawsuit in propria persona that the trustee did not intend to prosecute their state court claims. At no time prior to December 30, 1986, did the trustee take any action to intervene in this lawsuit or prosecute it. Faced with the trustee's evident inaction, the Danielsons could have timely petitioned the bankruptcy court for an order of abandonment, an order permitting them to prosecute the lawsuit, or an order compelling the trustee to prosecute it or permitting him to proceed on the Danielsons' behalf. There was no bar to the Danielsons' seeking this relief at any time after December 1982.

Therefore, it is reasonable to conclude that prosecution of this lawsuit was within the Danielsons' control to the degree that it was not "impossible, impracticable or futile" for them to serve ITT and Inland within two years.

B. *Distributing Co.'s, Truck Brokerage's and Schwingler's Motion to Dismiss*

The Danielsons argue that the bankruptcy court's denial of their motion for order of abandonment in September 1986, prior to Distributing Co.'s, Truck Brokerage's and Schwingler's motion to dismiss in state court, affirmed that it was "impossible, impracticable or futile" for them to serve defendants Distributing Co., Truck Brokerage and Schwingler from December 1982 through November 1985 because they did not have standing to prosecute their lawsuit. Their argument is unpersuasive.

The question is whether service of process is impossible, impracticable or futile under the circumstances (*Valerio* v. *Boise Cascade Corp., supra,* 177 Cal.App.3d at p. 1220), and generally the excuse of impossibility, impracticability or futility does not apply when the cause for delay in service is not beyond the plaintiff's control. (See, e.g., *Valerio* v. *Boise Cascade Corp., supra,* 177 Cal.App.3d at p. 1221; *Nelson* v. *State of California* (1982) 139 Cal.App.3d 72, 76 [188 Cal.Rptr. 479]; *Lesko* v. *Superior Court* (1982) 127 Cal.App.3d 476, 483 [179 Cal.Rptr. 595]; see also Cal. Law Revision Com. com., Deerings Ann. Code Civ. Proc., § 583.240 (1988 pocket supp.) pp. 97-98.)

The Danielsons have not convinced us that service was not within their control. Even before they filed the lawsuit, the Danielsons were aware that the trustee was not pursuing their state court claims. Rather than petition the bankruptcy court to compel the trustee to prosecute their claims or for other relief, they filed the lawsuit in propria persona. Between December 1982, when they filed the lawsuit, and November 1985, when they served the defendants, the Danielsons took no action to prosecute this

lawsuit, either by seeking affirmative relief through the bankruptcy court or by serving the defendants without authorization from the bankruptcy court. Then, in November 1985, without authorization from the bankruptcy court, and presumably without standing to prosecute, the Danielsons filed an amended complaint and served defendants. It was not until after the trial court had granted ITT's and Inland's motions to dismiss that the Danielsons petitioned the bankruptcy court for an order of abandonment, which petition was denied. The Danielsons offer no explanation why they could not have sought any affirmative relief during the three-year period in which they failed to serve defendants.

The Danielsons ask the court to accept an argument which would lead to absurd results. They argue that the bankruptcy court's order of September 1986 affirmed that it was "impossible, impracticable or futile" for them to serve defendants because they did not have standing to prosecute between December 1982 and October 1985; but at the same time they argue that they had standing to file the lawsuit in November 1982, to file an amended complaint in November 1985, to serve defendants in November 1985, to oppose all motions in state court in 1986, including the motions brought after the September 1986 bankruptcy court order denying their motion for abandonment, and to file these appeals. In other words, the Danielsons did not have standing to prosecute their lawsuit, except when it was advantageous for them to have it. We decline to accept their reasoning.

Thus the fact that the bankruptcy court denied the Danielsons' motion for abandonment in September 1986 is irrelevant to the question of whether service was "impossible, impracticable or futile" during the two year and eleven month period in question.

In determining a motion to dismiss for failure to serve summons in two years, a court must also consider the factors found in California Rules of Court, rule 373(e), such as plaintiff's diligence in serving defendant and "any fact or circumstance relevant to a fair determination of the issue." The greater the delay in service and the closer to the date dismissal becomes mandatory, the more difficult it is for plaintiff to justify the delay in service. Plaintiff must show that he acted with reasonable diligence throughout the entire period of time his case has been pending. (*Corlett* v. *Gordon* (1980) 106 Cal.App.3d 1005, 1014-1016 [165 Cal.Rptr. 524].)

Additionally, "prejudice accruing to a defendant may be a factor in determining a motion to dismiss . . ." and may be presumed in certain circumstances. (*Adams* v. *Roses* (1986) 183 Cal.App.3d 498, 505 [228 Cal.Rptr. 339].) "[A] court does not abuse its discretion in presuming

prejudice where a delay in service of the summons and complaint is prolonged and unjustified and defendants had no actual knowledge of the existence of the action—in short, the extraordinary circumstances of this case." (*Luti* v. *Graco, Inc., supra,* 170 Cal.App.3d at p. 238.) ▮ Here, the actions complained of occurred from 1979 through 1981. The Danielsons filed their complaint in December 1982, but did not serve defendants until November 1985. "A presumption of prejudice under these facts was well within the court's discretion." (*Ibid.*)[8] Defendants also demonstrated actual prejudice from the delay in service. In support of their motions to dismiss, defendants submitted declarations which evidenced their "inability to make discovery, interview witnesses and preserve evidence during the nearly three years before plaintiffs served defendants with the complaint. [Citations.]" (*Adams* v. *Roses, supra,* 183 Cal.App.3d at p. 505.)

We conclude the Danielsons have not met their burden of showing the trial court abused its discretion in failing to find the excuse of impossibility, impracticability or futility applied to the facts before it when it granted ITT's, Inland's, Distributing Co.'s, Truck Brokerage's and Schwingler's motions to dismiss for failure to serve summons within two years. Service was at all times within the Danielsons' control. The Danielsons offered no excuse for failure to seek affirmative relief from the bankruptcy court during the two-year and eleven-month delay in serving defendants and failed to demonstrate that service was "impossible, impracticable or futile" under the circumstances of this case. Additionally, the defendants demonstrated actual prejudice as a result of the Danielsons' delay in serving them. Based on the foregoing, we hold that the trial court did not abuse its discretion in granting defendants' motions to dismiss.[9]

---

[8] For a recent discussion of presumption of prejudice see *Schumpert* v. *Tishman Co.* (1987) 198 Cal.App.3d 598 [243 Cal.Rptr. 810].)

[9] Inland, Distributing Co., Truck Brokerage, and Schwingler also argued that the Danielsons lacked standing to file this lawsuit. We do not consider that issue here because we find that resolution of the issue of whether the trial court abused its discretion in granting defendants' motions to dismiss was dispositive. For the same reason, we do not consider the question of whether the Danielsons had standing to oppose defendants' motions to dismiss in the trial court, which was raised by Distributing Co., Truck Brokerage and Schwingler in their letter brief. Neither do we consider Distributing Co.'s, Truck Brokerage's and Schwingler's argument in their letter brief that the Danielsons lacked standing to prosecute this appeal. We also do not consider Distributing Co.'s, Truck Brokerage's and Schwingler's argument that the bankruptcy court's order of December 30, 1986, which authorized the trustee to employ special counsel to prosecute the state court lawsuit, did not confer retroactive standing on the Danielsons to prosecute this lawsuit. Finally, we do not consider the effect, if any, of the trustee's failure to substitute in as real party in interest after the bankruptcy court's order of September 1986 denying the Danielsons' motion for an order of abandonment or his failure to do so after the bankruptcy court's order of December 30, 1986, authorizing the trustee to employ special counsel to prosecute this action.

## DISPOSITION

The judgment is affirmed.

McDaniel, Acting P. J., and Dabney, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 8, 1988.